UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
Fort Myers Division
www.flmb.uscourts.gov

In re:

FIDDLER'S CREEK, LLC, *et al.* [1]

    Debtors.
_____/

Case No. 9:10-bk-03846-ALP
Chapter 11

**APPLICATION OF DEBTORS-IN-POSSESSION FOR EMPLOYMENT *NUNC PRO TUNC* OF PAUL J. BATTISTA AND THE LAW FIRM OF GENOVESE JOBLOVE & BATTISTA, P.A., AS GENERAL BANKRUPTCY COUNSEL FOR DEBTORS-IN-POSSESSION, AND REQUEST FOR INTERIM RELIEF**

Fiddler's Creek, LLC ("Fiddler's Creek") and twenty-seven (27) of its subsidiaries and affiliates (collectively, the "Debtors"), by and through their undersigned counsel, respectfully request the entry of an order pursuant to Sections 327 and 330 of Title 11 of the United States Code (hereinafter the "Bankruptcy Code") and Rules 2014, 2016 and 6003 of the Federal Rules of Bankruptcy Procedure, authorizing the employment of Paul J. Battista ("Battista") and the law firm of Genovese Joblove & Battista, P.A. ("GJB") *nunc pro tunc* to the Petition Date, as hereinafter defined, to represent the Debtors as their general bankruptcy counsel in these Chapter 11 cases. In support of this Application, the Debtors rely upon the *Affidavit of Paul J. Battista* attached hereto as Exhibit A (the "Battista Affidavit") and the *Declaration of Anthony DiNardo in Support of First Day*

---

[1] The Debtors seeking joint administration are: (i) Fiddler's Creek, LLC; (ii) 951 Land Holdings, LLC; (iii) 951 Land Holdings, Ltd.; (iv) DY Associates, LLC; (v) DY Land Associates, Ltd.; (vi) FC Beach, LLC; (vii) FC Beach, Ltd.; (viii) FC Golf, LLC; (ix) FC Golf, Ltd.; (x) FC Hotel, LLC; (xi) FC Hotel, Ltd.; (xii) FC Marina, LLC; (xiii) FC Resort, LLC; (xiv) FC Resort, Ltd.; (xv) Fiddler's Creek Management, Inc.; (xvi) GBFC Development, LLC; (xvii) GBFC Development, Ltd.; (xviii) GBFC Marina, Ltd.; (xix) Gulf Bay Hospitality Company, LLC; (xx) Gulf Bay Hospitality, Ltd.; (xxi) Gulf Bay Hotel Company, LLC; (xxii) Gulf Bay Hotel Company, Ltd.; (xxiii) DY Land Holdings II, LLC; (xxiv) FC Commercial, LLC; (xxv) FC Parcel 73, LLC; (xxvi) GB Peninsula, Ltd., (xxvii) GBP Development, Ltd. and (xxviii) GBP Development, LLC .

*Pleadings* (the "First Day Declaration"). In further support of this Application, the Debtors respectfully represent as follows:

## BACKGROUND

### A. The Chapter 11 Filing

1. On February 23, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtors have operated as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. As of the date hereof, no creditors' committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory predicates for the relief requested herein are Sections 327(a) and 330 of the Bankruptcy Code and Rules 2014, 2016 and 6003 of the Federal Rules of Bankruptcy Procedure.

### B. Background and Business Operations

5. Each of the Debtors in these Chapter 11 cases owns, operates and/or is otherwise affiliated with the premier, fully integrated, master planned residential community known as "Fiddler's Creek" in southwestern Florida. Fiddler's Creek is located in Collier County, Florida, approximately 12 miles southeast of the City of Naples and six miles north of Marco Island. The Fiddler's Creek development is comprised of nearly 4,000 zoned acres of prime land in Naples, Florida, and is planned for and capable of accommodating up to 6,000 residences upon projected

build-out, which is estimated to be in 2020. Fiddler's Creek has been approved and vested by the State of Florida as a Development of Regional Impact.

6. The property underlying Fiddler's Creek was accumulated by the Debtors from 1993 through 1996. In 1998, Fiddler's Creek developed, constructed and sold its first home. Since then, Fiddler's Creek has constructed and sold in excess of 1,650 homes in the development. As a result, Fiddler's Creek is home to over 4,300 full and part time residents.

7. Fiddler's Creek contains five distinctive neighborhoods known as: Fiddler's Creek, Veneta, Aviamar, Marsh Cove and Meadow Run. Within each of these neighborhoods are several unique villages of varying housing products offering a wide range of price points. In total, there are 1,782 fully constructed and existing homes, including single family homes, coach homes and carriage homes in different communities within Fiddler's Creek. In addition, there is completed infrastructure for an additional platted 840 units of both single family homesites and multifamily units within a variety of villages.

8. In addition, there is over 33 acres of prime commercial property that is "infrastructure ready," with approximately 23 acres situated along State Road 951 (Collier Blvd.) and approximately 9 acres situated along US 41 (Tamiami Trail). The total commercial square footage for buildout is approximately 300,000 square feet.

9. In addition to the above saleable inventory of homes and developed lots, Fiddler's Creek contains approximately 2,100 acres of undeveloped land fully entitled for approximately 3,329 additional residential units and amenities. This includes approximately 1,300 acres of the undeveloped land approved for future amenity development, including two golf courses, clubhouses, expanded tennis facilities, lakes, preserves and more. Less than one-third of Fiddler's Creek will be

developed for residential use, while the remainder of the land is dedicated primarily to nature preserves, lakes, parks, golf courses and recreational areas.

10. Still further, Fiddler's Creek contains substantial and fully completed operating amenities which are enjoyed by the homeowners, including: The Club & Spa at Fiddler's Creek, which is a 54,000 square-foot resort style clubhouse with state-of- the-art fitness facility, lighted tennis courts, full menu spa services, resort style multi-pool swimming complex, casual and formal dining venues and a meeting and activity center.

11. Additionally, homeowners have the opportunity to join The Golf Club at Fiddler's Creek, with its first private course, named "The Creek Course," designed by the acclaimed golf course architect, Arthur Hills. The Creek Course has been nationally recognized by Golf Week magazine as one of the Top 100 Best Residential Golf Courses for each of years 2005 through 2009. Fiddler's Creek has also been recognized by Travel & Leisure magazine as one of America's Top 100 Golf Communities for two consecutive years. The second course, The Preserve Course, is currently being designed by the award winning team of Hurdzan/Frye.

12. Fiddler's Creek homeowners also have the option to join The Tarpon Club, which offers members beach privileges, dinning, spa services (as well as other resort amenities) at Marco Beach Ocean Resort, located on nearby Marco Island. In addition, the Tarpon Club has a dry boat storage facility that is designed to accommodate up to 150 boats ranging in size up to 35 feet, and is currently finalizing permit rights for 52 wet slips which will accommodate larger boats.

13. For further information on the Debtors' capital structure, business and operations, the Debtors refer to the First Day Declaration filed contemporaneously herewith.

## RELIEF REQUESTED

14.     By this Application, the Debtors seek to employ and retain Paul J. Battista, Esq. and the law firm of GJB as their general restructuring and bankruptcy counsel with regard to the filing of their Chapter 11 petitions and the prosecution of their Chapter 11 cases.  Accordingly, the Debtors respectfully request the entry of an order pursuant to Section 327(a) of the Bankruptcy Code, followed by the entry of a final order to be entered at a hearing to be held twenty (20) days later, authorizing them to employ and retain Paul J. Battista, Esq. and the law firm of GJB as their general bankruptcy counsel under a general retainer to perform the legal services that will be necessary during their Chapter 11 cases as more fully described below.

15.     Prior to the commencement of these Chapter 11 cases, the Debtors sought the services of GJB principally with respect to advice regarding restructuring matters in general, and the preparation for and potential commencement and prosecution of a Chapter 11 case for the Debtors. The Debtors believe that the continued representation by their pre-petition restructuring counsel, GJB, is critical to the Debtors' efforts to restructure their business because GJB has extensive experience and expertise in complex commercial reorganization cases and has become very familiar with the Debtors' business, legal and financial affairs.  Accordingly, GJB is well-suited to guide the Debtors through the Chapter 11 process.

## BASIS FOR RELIEF

16.     Continued representation of the Debtors by their restructuring counsel, GJB, is critical to the success of the Debtors' reorganization efforts because GJB is and has become very familiar with the Debtors' business, financial and legal affairs.

17.     The Debtors have selected the firm of GJB as their attorneys because of GJB's

experience with and knowledge of the Debtors and their business, as well as its extensive experience, knowledge and expertise in the field of debtors and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

18. The Debtors desire to employ the firm of GJB under a general retainer because of the extensive legal services that will be required in connection with their Chapter 11 cases and the firm's familiarity with the business of the Debtors.

## SERVICES TO BE RENDERED

19. The services of GJB are necessary to enable the Debtors to execute faithfully their duties as debtors-in-possession. Subject to order of this Court, the law firm of GJB will be required to render, among others, the following services to the Debtors:

(a) advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession in the continued management and operation of their business and properties;

(b) attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult on the conduct of the case, including all of the legal and administrative requirements of operating in Chapter 11;

(c) advise the Debtors in connection with any contemplated sales of assets or business combinations, including the negotiation of sales promotion, liquidation, stock purchase, merger or joint venture agreements, formulate and implement bidding procedures, evaluate competing offers, draft appropriate corporate documents with respect to the proposed sales, and counsel the Debtors in connection with the closing of such sales;

(d) advise the Debtors in connection with post-petition financing and cash collateral arrangements, provide advice and counsel with respect to pre-petition financing arrangements, and provide advice to the Debtors in connection with the emergence financing and capital structure, and negotiate and draft documents relating thereto;

(e) advise the Debtors on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(f) provide advice to the Debtors with respect to legal issues arising in or relating to the Debtors' ordinary course of business including attendance at senior management meetings, meetings with the Debtors' financial and turnaround advisors and meetings of the board of directors, and advice on employee, workers' compensation, employee benefits, labor, tax, insurance, securities, corporate, business operation, contracts, joint ventures, real property, press/public affairs and regulatory matters;

(g) take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on their behalf, the defense of any actions commenced against the estates, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the estates;

(h) prepare on behalf of the Debtors all motions, applications, answers, orders, reports and papers necessary to the administration of the estates;

(i) negotiate and prepare on the Debtors' behalf a plan of reorganization, disclosure statement and all related agreements and/or documents, and take any necessary action on behalf of the Debtors to obtain confirmation of such plan;

(j) attend meetings with third parties and participate in negotiations with respect to the above matters;

(k) appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

(l) perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with these Chapter 11 cases.

20. The firm of GJB is willing to act on behalf of the Debtors as set forth above.

### **DISINTERESTEDNESS OF PROFESSIONALS**

21. Except as set forth in the Battista Affidavit, to the best of the Debtors' knowledge, the shareholders, counsel and associates of GJB: (a) do not have any connection with any of the Debtors, their affiliates, their creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest, or their respective attorneys and accountants; (b) are

"disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtors' estate.

    22.    More specifically, as set forth in the Battista Affidavit:

    (a)    Neither GJB nor any attorney at the firm holds or represents an interest adverse to the Debtors' estates.

    (b)    Neither GJB nor any attorney at GJB is or was a creditor, an equity holder, or an insider of the Debtors, except that GJB previously rendered legal services to the Debtors for which it was compensated.

    (c)    Neither GJB nor any attorney at GJB is or was, within two years before the Petition Date, a director, officer or employee of the Debtors.

    (d)    GJB does not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

## **PROFESSIONAL COMPENSATION**

    23.    GJB received retainers from the Debtors on the following dates and in the following amounts (collectively, the "Retainer"): (i) on April 8, 2009 in the amount of $100,000; (ii) on October 23, 2009 in the amount of $50,000; (iii) on December 16, 2009 in the amount of $90,000; (iv) on January 13, 2010, in the amount of $100,000; and (v) on February 5, 2010 in the amount of $140,000. In connection with the pre-petition legal services related to the preparation of the bankruptcy filing provided by GJB, GJB billed the Debtors the following amounts for the following months: (i) $30,321.00, for fees and expenses through April 30, 2009; (ii) $38,267.00, for fees and expenses through May 31, 2009; (iii) $25,994.34, for fees and expenses through June 30, 2009; (iv) $3,657.64, for fees and expenses through July 31, 2009; (v) $2,075.58, for fees and expenses through August 31, 2009; (vi) $4,830.00 for fees and expenses through September 30, 2009; (vii) 14,748.75 for fees and expenses through October 31, 2009; (viii) $43,795.95 for fees and expenses through

November 30, 2009; (ix) $92,258.79 for fees and expenses through December 31, 2009; and (x) $80,592.39 for fees and expenses through January 31, 2010 (collectively, the "Pre-petition Invoices"). GJB paid the Pre-petition Invoices from the Retainer in the following amounts on the following dates: (i) $30,321.00 on May 8, 2009; (ii) $38,267.00 on June 16, 2009; (iii) $25,994.34 on July 21, 2009; (iv) $5,417.66 on September 15, 2009; (v) $19,578.75 on November 17, 2009; (vi) $30,421.25 on December 10, 2009; (vii) $13,374.70 on December 16, 2009; (viii) $95,258.79 on January 14, 2010; and (ix) $80,592.39 on February 10, 2010. In addition, on February 18, 2010, prior to the filing of the within bankruptcy cases, GJB transferred an amount equal to $111,682.12 from the Retainer to GJB's operating account to pay the accrued fees and expenses incurred by GJB during the month of February 2010. On February 22, 2010, GJB transferred the remaining $29,092.00 from the Retainer to GJB's operating account to pay accrued fees and expenses incurred by GJB during the month of February 2010. On February 22, 2010, prior to the filing of the within bankruptcy cases, GJB waived the balance of its fees and expenses. As a result, GJB does not have a Retainer in these Chapter 11 cases.

24. All such fees and expenses were incurred (i) in contemplation of the filing of these chapter 11 cases, and (iii) in respect of the preparation of these chapter 11 cases.

25. GJB intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in these Chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court, including but not limited to for the filing fees associated with these Chapter 11 cases, which were charged on GJB's corporate America Express card after each of the Debtors' petitions were filed. GJB will seek compensation for the services of

each attorney and paraprofessional acting on behalf of the Debtors in this case at the then-current rate charged for such services.

26.     Consistent with the firm's policy with respect to its other clients, GJB will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services.  These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

27.     GJB has agreed to accept as compensation such sums as may be allowed by the Court on the basis, among others, of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in this case.

28.     Other than as set forth herein and in the Battista Affidavit, no arrangement is proposed between the Debtors and GJB for compensation to be paid in this case, and no agreement or understanding exists between GJB and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

29.     No previous request for the relief sought in this Application has been made to this Court or any other Court.

## REQUEST FOR INTERIM RELIEF

30.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or

> represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

31. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

32. Pursuant to the recently revised Bankruptcy Rule 6003, the court may grant relief regarding an application pursuant to Bankruptcy Rule 2014 to retain a professional within 20 days after the filing of the petition to the extent the relief is necessary to avoid immediate and irreparable harm. Bankruptcy Rule 6003, however, does not expressly forbid courts from entering interim orders approving professional retentions during the first 20 days of a chapter 11 cases. See, e.g., First NLC Fin. Servs, LLC, No. 08-10632 (Bankr. S.D. Fla. Jan. 28, 2008); In re TOUSA, Inc., et al., No. 08-10928-BKC-JKO (Bankr. S.D. Fla. Jan. 31, 2008)(approving interim retentions of financial advisor and legal counsel on interim basis within first 20 days of chapter 11 case).

33. First, according to the Advisory Committee note to Bankruptcy Rule 6003, the standard employed in Bankruptcy Rule 6003 is taken from Bankruptcy Rule 4001(b)(2) and (c)(2), and decisions under those provisions should provide guidance for the application of Bankruptcy Rule 6003. Bankruptcy Rules 4001(b)(2) and (c)(2) are well understood and are the model for numerous first-day motions, such as obtaining credit and seeking use of cash collateral. That process

is well established: if the court is so disposed, the partial relief is granted for the interim before the final hearing can be conducted. Later, after further opportunity for other parties in interest to consider the application and to object, the court, if so disposed will grant the balance of the relief requested.

34. Second, Bankruptcy Rule 6003 is entitled "Interim and Final Relief Immediately Following the Commencement of the Case…." Thus, the very title of the Bankruptcy Rule contemplates that relief may be granted on an interim basis.

35. Interim relief is clearly justified and appropriate in the context of this Application.

36. It is well recognized in this district and others that a corporation must be represented by counsel to appear in court because it is merely an artificial entity that can only act through its agents and thus may not appear pro se. See, e.g., Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985) ("Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally . . . they must be represented by licensed counsel."); see also In re K.M.A., Inc., 652 F.2d 398, 399 (5th Cir. 1981) ("The law is clear that a corporation as a fictional legal person can only be represented by licensed counsel."); Jones v. Niagara Frontier Transp. Authority, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed pro se."). This requirement is further established by Local Rule 1074-1, which provides that "[c]orporations, partnerships, trusts and other non-individual parties may appear and be heard only through counsel permitted to practice in the Court pursuant to Local Rule 2090-1."

37. Accordingly, without general bankruptcy counsel, the Debtors are technically unable to proceed with these cases. GJB will play an integral role in the first 20 days of these chapter 11

cases. Among other things, the Debtors will need GJB's assistance in stabilizing business operations, negotiating with key creditor constituencies, addressing issues related to the "first day" hearing and related orders, constructing a business plan and plan of reorganization and defining the Debtors' path post-restructuring.

38.     Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support entry of an order, authorizing the Debtors to retain and employ GJB on an interim basis and to compensate GJB for any services rendered during that interim period in accordance with the Bankruptcy Code and the interim compensation procedures that may be established in these cases. This interim form of relief ensures the availability of GJB's full resources to the Debtors during a critical period in these cases, while preserving the ability of all parties in interest, including the U.S. Trustee, to object to this application on a final basis.

WHEREFORE, the Debtors respectfully requests that the Court enter an order: (i) authorizing the Debtors' retention of Paul J. Battista, Esq. and the law firm of GJB on an interim basis upon the terms outlined in this Application nunc pro tunc to the Petition Date; (ii) setting a final hearing on this Application at least twenty (20) days from the date of the interim order; and (iii) granting such other and further relief as is just and proper.

Dated: February 24, 2010

                                                Respectfully Submitted,

                                                FIDDLER'S CREEK, LLC, et al.

                                                By: ___/s/ Anthony DiNardo____
                                                      Anthony DiNardo
                                                      Authorized Officer

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
Fort Myers Division
www.flmb.uscourts.gov

In re:  Case No. 9:10-bk-03846-ALP
Chapter 11
FIDDLER'S CREEK, LLC, *et al.*[1]

    Debtors.
_____/

### AFFIDAVIT OF PAUL J. BATTISTA, ON BEHALF OF GENOVESE JOBLOVE & BATTISTA, P.A., PROPOSED BANKRUPTCY COUNSEL FOR DEBTORS-IN-POSSESSION

STATE OF FLORIDA      )
                                ) ss:
COUNTY OF MIAMI-DADE   )

    I, Paul J. Battista, being duly sworn, deposes and says:

    1.    I am an attorney and shareholder of the law firm of Genovese Joblove & Battista, P.A. ("GJB").  GJB maintains offices for the practice of law at Bank of America Tower, 100 Southeast Second Street, Suite 4400, Miami, Florida 33131 and National City Center, 200 East Broward Boulevard, Suite 1110 Fort Lauderdale, Florida 33301.  I am familiar with the matters set forth herein and make this Affidavit in support of the Application of Debtors-In-Possession for Employment *Nunc Pro Tunc* of Paul J. Battista and GJB as General Bankruptcy Counsel for Debtors-In-Possession (the "Application").

---

[1] The Debtors seeking joint administration are:  (i) Fiddler's Creek, LLC; (ii) 951 Land Holdings, LLC; (iii) 951 Land Holdings, Ltd.; (iv) DY Associates, LLC; (v) DY Land Associates, Ltd.; (vi) FC Beach, LLC; (vii) FC Beach, Ltd.; (viii) FC Golf, LLC; (ix) FC Golf, Ltd.; (x) FC Hotel, LLC; (xi) FC Hotel, Ltd.; (xii) FC Marina, LLC; (xiii) FC Resort, LLC; (xiv) FC Resort, Ltd.; (xv) Fiddler's Creek Management, Inc.; (xvi) GBFC Development, LLC; (xvii) GBFC Development, Ltd.; (xviii) GBFC Marina, Ltd.; (xix) Gulf Bay Hospitality Company, LLC; (xx) Gulf Bay Hospitality, Ltd.; (xxi) Gulf Bay Hotel Company, LLC; (xxii) Gulf Bay Hotel Company, Ltd.; (xxiii) DY Land Holdings II, LLC; (xxiv) FC Commercial, LLC; (xxv) FC Parcel 73, LLC; (xxvi) GB Peninsula, Ltd., (xxvii) GBP Development, Ltd. and

2. In support of the Application, I disclose the following:

a. Unless otherwise stated, this Affidavit is based upon facts of which I have personal knowledge.

b. In preparing this Affidavit, I have reviewed the list of all creditors and equity security holders of the Debtors provided to us by the Debtors. GJB maintains a computerized conflicts check system. GJB has compared the information obtained thereby with the information contained in its client and adverse party conflict check system. The facts stated in this Affidavit as to the relationship between GJB and the Debtors, the Debtors' creditors, the United States Trustee, other persons employed by the Office of the United States Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code, are based on the results of my review of GJB's conflict check system. Based upon such search, GJB does not represent any entity in any matter involving or adverse to the Debtors or which would constitute a conflict of interest or impair the disinterestedness of GJB in respect of its representation of the Debtors herein.

3. GJB's client and adverse party conflicts check system is comprised of records regularly maintained in the course of business by GJB, and it is the regular practice of GJB to make and maintain these records. The system reflects entries that are noted at the time the information becomes known by persons whose regular duties include recording and maintaining this information. I am one of the persons who is responsible for the supervision of the department of GJB which keeps this system up-to-date, and I regularly use and rely upon the information contained in the system in the performance of my duties with GJB and in my practice of law.

---

(xxviii) GBP Development, LLC .

4. GJB neither holds nor represents any interest adverse to the Debtors and is a "disinterested person" within the scope and meaning of Section 101(14) of the Bankruptcy Code.

5. Neither I nor GJB has or will represent any other entity in connection with these cases, and neither I nor GJB will accept any fee from any other party or parties in these cases, except the Debtors-In-Possession, unless otherwise authorized by the Court.

14. GJB received retainers from the Debtors on the following dates in the following amounts (collectively, the "Retainer"): (i) on April 8, 2009 in the amount of $100,000; (ii) on October 23, 2009 in the amount of $50,000; (iii) on December 16, 2009 in the amount of $90,000; (iv) on January 13, 2010, in the amount of $100,000; and (v) on February 5, 2010 in the amount of $140,000.  In connection with the pre-petition legal services provided by GJB, GJB billed the Debtors the following amounts on the following dates: (i) $30,321.00, for fees and expenses through April 30, 2009; (ii) $38,267.00, for fees and expenses through May 31, 2009; (iii) $25,994.34, for fees and expenses through June 30, 2009; (iv) $3,657.64, for fees and expenses through July 31, 2009; (v) $2,075.58, for fees and expenses through August 31, 2009; (vi) $4,830.00 for fees and expenses through September 30, 2009; (vii) 14,748.75 for fees and expenses through October 31, 2009; (viii) $43,795.95 for fees and expenses through November 30, 2009; (ix) $92,258.79 for fees and expenses through December 31, 2009; and (x)  $80,592.39 for fees and expenses through January 31, 2010 (collectively, the "Pre-petition Invoices").  GJB paid the Pre-petition Invoices from the Retainer in the following amounts on the following dates: (i) $30,321.00 on May 8, 2009; (ii) $38,267.00 on June 16, 2009; (iii) $25,994.34 on July 21, 2009;  (iv) $5,417.66 on September 15, 2009; (v) $19,578.75 on November 17, 2009; (vi) $30,421.25 on December 10, 2009; (vii) $13,374.70 on December 16, 2009; (viii) $95,258.79 on January 14, 2010; and (ix) $80,592.39 on

February 10, 2010. In addition, on February 18, 2010, prior to the filing of the within bankruptcy cases, GJB transferred an amount equal to $111,682.12 from the Retainer to GJB's operating account to pay the accrued fees and expenses incurred by GJB during the month of February 2010. On February 22, 2010, GJB transferred the remaining $29,092.00 from the Retainer to GJB's operating account to pay accrued fees and expenses incurred by GJB during the month of February 2010. On February 22, 2010, prior to the filing of the within bankruptcy cases, GJB waived the balance of its fees and expenses. As a result, GJB does not have a Retainer in these Chapter 11 cases.

6.  The professionals' fees and costs to be incurred by GJB in the course of its representation of the Debtors in these cases shall be subject in all respects to the application and notice requirement of 11 U.S.C. §§ 330 and 331 and Fed. R. Bank. P. 2014 and 2016.

7.  The hourly rates for the attorneys at GJB range from $195 to $525 per hour. The hourly rates of Paul J. Battista, Heather L. Harmon and Michael L. Schuster, the attorneys who will be principally working on these cases, are $525, $330 and $225, respectively. The hourly rates for the legal assistants at GJB range from $75 to $160. GJB reserves the right to increase its hourly rates in accordance with its normal and customary business practices.

8.  There is no agreement of any nature as to the sharing of any compensation to be paid to GJB, except between the attorneys of GJB. No promises have been received by GJB, nor any member or associate thereof, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

9.  No attorney at GJB holds a direct or indirect equity interest in the Debtors, including stock or stock warrants, or has a right to acquire such an interest.

10. No attorney at GJB is or has served as an officer, director or employee of the Debtors within two years before the Petition Date.

11. No attorney at GJB is in control of the Debtors or is a relative of a director, officer or person in control of the Debtors.

12. No attorney at GJB is a general or limited partner of a partnership in which any of the Debtors is also a general or limited partner.

13. No attorney at GJB is or has served as an officer, director or employee of a financial advisor that has been engaged by the Debtors in connection with the offer, sale or issuance of a security of the Debtors, within two years before the Petition Date.

14. No attorney at GJB has represented a financial advisor of the Debtors in connection with the offer, sale or issuance of a security of the Debtors within three years before the Petition Date.

15. No attorney at GJB has any other interest, direct or indirect, that may be affected by the proposed representation.

18.  Except as set forth herein, no attorney at GJB has had or presently has any connection with the above-captioned Debtors or the estates on any matters in which GJB is to be engaged, except that I, GJB and our attorneys: (i) may have appeared in the past and may appear in the future in other cases in which one or more of said parties may be involved; and (ii) may represent or may have represented certain of the Debtors' creditors in matters unrelated to these cases.

FURTHER, AFFIANT SAYETH NOT.

/s/ _____
PAUL J. BATTISTA, ESQ.

SWORN TO AND SUBSCRIBED before me this 24th day of February 2010

_____
NOTARY PUBLIC,
STATE OF FLORIDA AT LARGE

Print Name: David Cimo
Commission No. _____
Commission Expires: _____




DAVID C. CIMO
MY COMMISSION # DD 823890
EXPIRES: October 12, 2012
Bonded Thru Notary Public Underwriters