| | |
|---|---|
| In re: | Chapter 11 |
| FIDDLER'S CREEK, LLC | Case No. 9:10-bk-03846-ALP |
| 951 LAND HOLDINGS, LLC | Case No. 9:10-bk-03852-ALP |
| DY ASSOCIATES, LLC | Case No. 9:10-bk-03856-ALP |
| GBFC DEVELOPMENT, LLC | Case No. 9:10-bk-03864-ALP |
| FC MARINA, LLC | Case No. 9:10-bk-03872-ALP |
| FC BEACH, LLC | Case No. 9:10-bk-03873-ALP |
| FC GOLF, LLC | Case No. 9:10-bk-03875-ALP |
| DY LAND HOLDINGS II, LLC | Case No. 9:10-bk-03878-ALP |
| FC PARCEL 73, LLC | Case No. 9:10-bk-03881-ALP |
| FC COMMERCIAL, LLC | Case No. 9:10-bk-03886-ALP |
| FC HOTEL, LLC | Case No. 9:10-bk-03888-ALP |
| FC RESORT, LLC | Case No. 9:10-bk-03896-ALP |
| GULF BAY HOSPITALITY COMPANY, LLC | Case No. 9:10-bk-03898-ALP |
| GULF BAY HOTEL COMPANY, LLC | Case No. 9:10-bk-03905-ALP |
| GBP DEVELOPMENT, LLC | Case No. 9:10-bk-03908-ALP |
| GB PENINSULA, LTD. | Case No. 9:10-bk-03909-ALP |
| 951 LAND HOLDINGS, LTD. | Case No. 9:10-bk-03911-ALP |
| DY LAND ASSOCIATES, LTD. | Case No. 9:10-bk-03918-ALP |
| GBFC DEVELOPMENT, LTD. | Case No. 9:10-bk-03920-ALP |
| GBFC MARINA, LTD. | Case No. 9:10-bk-03928-ALP |
| FC BEACH, LTD. | Case No. 9:10-bk-03934-ALP |
| FC GOLF, LTD. | Case No. 9:10-bk-03937-ALP |
| FC HOTEL, LTD. | Case No. 9:10-bk-03938-ALP |
| FC RESORT, LTD. | Case No. 9:10-bk-03947-ALP |
| GULF BAY HOSPITALITY, LTD. | Case No. 9:10-bk-03949-ALP |
| GULF BAY HOTEL COMPANY, LTD. | Case No. 9:10-bk-03950-ALP |
| GBP DEVELOPMENT, LTD. | Case No. 9:10-bk-03952-ALP |
| FIDDLER'S CREEK MANAGEMENT, INC., | Case No. 9:10-bk-03954-ALP |
| Debtors. | **(Jointly Administered under Case No. 9:10-bk-03846-ALP)** |

_____/

# THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINDER IN COLONNADE NAPLES LAND, LLC'S MOTION TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS FOR FILING A PLAN AND SOLICITING ACCEPTANCES THEREOF

The Official Unsecured Creditors' Committee (the "Committee") of (i) Fiddler's Creek, LLC; (ii) 951 Land Holdings, LLC; (iii) 951 Land Holdings, Ltd.; (iv) DY Associates, LLC; (v)

DY Land Associates, Ltd.; (vi) FC Beach, LLC; (vii) FC Beach, Ltd.; (viii) FC Golf, LLC; (ix) FC Golf, Ltd.; (x) FC Hotel, LLC; (xi) FC Hotel, Ltd.; (xii) FC Marina, LLC; (xiii) FC Resort, LLC; (xiv) FC Resort, Ltd.; (xv) Fiddler's Creek Management, Inc.; (xvi) GBFC Development, LLC; (xvii) GBFC Development, Ltd.; (xviii) GBFC Marina, Ltd.; (xix) Gulf Bay Hospitality Company, LLC; (xx) Gulf Bay Hospitality, Ltd.; (xxi) Gulf Bay Hotel Company, LLC; (xxii) Gulf Bay Hotel Company, Ltd.; (xxiii) DY Land Holdings II, LLC; (xxiv) FC Commercial, LLC; (xxv) FC Parcel 73, LLC; (xxvi) GB Peninsula, Ltd., (xxvii) GBP Development, Ltd. and (xxviii) GBP Development, LLC (collectively, the "Debtors"), by and through its undersigned counsel, submits this Joinder (the "Joinder") in Colonnade Naples Land, LLC's ("Colonnade"), *Motion to Terminate the Debtors' Exclusive Periods to File a Plan of Reorganization and Solicit Acceptances Thereof* [D.E. # 484] (the "Exclusivity Motion"). In support thereof, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

Colonnade seeks to terminate the Debtors' exclusivity period so that it may file and prosecute a competing plan of reorganization in these cases[1]. The Debtors have also filed eleven (11) plans of reorganization that propose (a) either the surrender of collateral, or (b) the restructuring of their liabilities through the promise of deferred cash payments over a period of approximately 5 years. While the Committee does not endorse any of the plans as currently proposed, the Committee believes that a competitive plan process will assure that the estates, their creditors and all parties in interest – including homeowners and club members – will realize the maximum value in the cases. Accordingly, the Committee urges the Court to grant the

---

[1] Colonnade's proposed plan of reorganization is attached as an exhibit to the Exclusivity Motion.

Exclusivity Motion so as to permit any creditor or party in interest to file and prosecute approval of one or more plans of reorganization.

## BACKGROUND

1. On February 23, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtors have operated as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. On March 9, 2010, an Official Committee of Homeowners was appointed by the Office of the United States Trustee [D.E. # 72].

3. On April 12, 2010, the Office of the United States Trustee filed an Amended Notice, reconstituting the committee from an Official Committee of Homeowners to the Official Unsecured Creditors' Committee [D.E. # 132].

4. The exclusive period during which only the Debtors could file one or more plans of reorganization was to expire on June 23, 2010.

5. By order dated October 5, 2010 [D.E. # 411], this Court extended through December 3, 2010 the exclusive period during which only the Debtors may file a plan, and extended through February 3, 2011 the exclusive period during which only the Debtors may solicit acceptances to their plan.

6. On November 24, 2010, Colonnade filed the Exclusivity Motion, including a draft proposed plan of reorganization for the Debtors (the "Colonnade Plan").

7. Nine days later, on the last day of the extended exclusivity period, December 3, 2010, the Debtors filed their Joint Disclosure Statement [D.E. # 515] and Plans of Reorganization [D.E. # 504-514] (the "Debtors' Plans").

8. Despite the Committee's continuous efforts to discuss with the Debtors the terms of a plan of reorganization, including at a face to face meeting on September 20, 2010, the Debtors did not vet with the Committee the terms of the Debtors' Plans prior to filing them.

9. The Debtors' Plans provide for either (a) the surrender of collateral to the secured lenders, or (b) a restructuring of their secured and unsecured debt by proposing to make deferred cash payments over a period of approximately five (5) years from the Effective Date of the Debtors' Plans. Each of the eleven (11) plans propose, in the event all eligible classes do not accept one or more of the Debtors' Plans, to cramdown the treatment of claims pursuant to 11 U.S.C. § 1129(b)(2)(A) & (B). Each of the Debtors' Plans proposes that equity will retain its interests while unsecured creditors receive approximately five percent (5%) on the allowed amount of their claims payable over time[2].

10. By way of this Joinder, the Committee supports the Exclusivity Motion of Colonnade and seeks to have this Court terminate the Debtors' exclusive period for soliciting acceptance of the Debtors' Plans, so as to permit Colonnade or any other party in interest to file and prosecute approval of one or more plans. As evidenced by the Exclusivity Motion, Colonnade has expressed a bona fide interest in proposing a reorganization for the Debtors.

11. The Colonnade plan and the Debtors' Plans contain, among other things, contingencies that concern the Committee. The Colonnade plan is premised on a transaction which is subject to, among other things, satisfactory completion of due diligence[3]. The Debtors' Plans are to be funded through an exit financing commitment provided by Mt. Kellett Capital

---

[2] The Debtors' Plans also include a Convenience Class comprised of the (a) those creditors who hold unsecured claims in the amount of $25,000 or less, or (b) who elect to reduce their claims to $25,000. Convenience Claims will be paid in full, without interest, over time.

[3] The Colonnade plan of reorganization is premised on a sale of substantially all of the Debtors' assets. The sale transaction is subject to a sixty (60) day inspection period during which the purchaser may terminate the contract for any reason without penalty.

Management, L.P. ("Mt. Kellett"). The proposed commitment is attached to each of the Debtors' Plans. The financing commitment is subject to a number of contingencies including, without limitation, the lender's completion of all business, financial and legal due diligence. Importantly, the exit financing is also conditioned upon Mt. Kellett's approval of the Debtors' business plan (the "Projections"). As of the date hereof, the Projections have not been filed.

12. Under the circumstances of these cases, the Committee believes that the Court should terminate the Debtors' exclusivity so as to subject the Debtors' assets to a competitive process that will assure that all stakeholders realize the highest and best recovery.

## DISCUSSION

Section 1121 of the Bankruptcy Code provides, in pertinent part:

> (b) except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.
> (c) Any party in interest, including the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if –
> > (1) a trustee has been appointed under this chapter;
> > (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
> > (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.
> (d)(1) Subjext to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121 (2010). At issue here is whether cause exists to terminate the Debtors' exclusivity period pursuant to §1121(c)(3), which has been extended until February 3, 2010, by Order of this Court. The Debtor's exclusive period for filing a plan, pursuant to § 1121(b), expired after extension on December 3, 2010, the same date the Debtors filed their Plans of Reorganization.

In this context, Courts have observed that the term "cause" is not defined in § 1121 or the Code, and is a fact-specific inquiry. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006). The determination of whether "cause" exists is left to the sound discretion of the Court. *See*, *e.g.*, *In re Leigh High Valley Prof'l Sports Club, Inc.*, 2000 WL 290187, at *2 (Bankr. E.D.Pa. Mar. 14, 2000); *In re Sharon Steel Corp*, 78 B.R 762, 763 (Bankr. W.D. Pa. 1987). As noted in the Exclusivity Motion, Court's generally look to nine factors when deciding to either reduce or expand a debtor's § 1121 period of exclusivity. These nine factors include: (1) the size and complexity of the case; (2) the necessity of sufficient time to negotiate and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) whether the debtor is paying its debts as they come due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiating with creditors; (7) the length of time the case has been pending; (8) whether the debtor is seeking the extension to pressure creditors; and (9) whether unresolved contingencies exist. *Id. In re Adelphi*, 352 B.R. at 587-90; *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 487 (Bankr. D. Conn. 2007). In evaluating "cause" all factors will not be relevant in every case, and a bankruptcy court should make a determination of the appropriate weight to afford the relevant factors, rather than engaging in a simple calculation of the number of factors which weigh for and against an extension or termination. *See, In re Hoffinger Industries, Inc.*, 292 B.R. 639, 644 (8th Cir. B.A.P. 2003). At least one court has found that the overriding factor is whether terminating the debtor's exclusivity "will facilitate moving the case forward." *See*, *In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997).

Under these factors, the Committee incorporates by reference Colonnade's discussion, and urges that the factors to be accorded the most weight are (1) the lack of any viable plan of

reorganization; (2) the absence of material negotiation or progress with creditors in the formulation of a consensual Plan[4]; and (3) the harm and lack of benefit arising from further delay.

Most importantly, in the context of a case such as this, where the only issue presented is termination of a debtor's 180-day period for seeking acceptances pursuant to §1121(c)(3), and the exclusive period for filing a plan has already expired, courts look to whether the plan for which the debtor may exclusively seek acceptances realistically presents any "serious reorganizational possibilities." *See*, *In re Grossinger's Associates*, 116 B.R. 34, 36 (Bankr. E.D.N.Y 1990). Based on the record in these cases, the Committee submits that the Debtors' Plans have no "serious reorganizational possibilities" because, *inter alia*, each of the plans implicates and violates the absolute priority rule and the requirements of *Bank of America Nat'l Trust and Savs. Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434 (1999). Unless at least two-thirds in amount and more than one-half in number of all classes of impaired claims and interests vote in favor of the Debtors' Plans (a highly unlikely prospect at this stage) the Debtors' Plans will not pass muster because they cannot satisfy the fair and equitable requirements of §1129(b)(2)(A) & (B). The Plans provide for general unsecured creditors to receive no more than five (5) percent recovery on their claims payable in six semi-annual payments beginning six months after the effective date, while equity remains unaltered and retains its interests. Accordingly, the Debtors are proposing that junior classes of interests receive or retain under the plan before senior classes of claims are paid in full. It is manifestly unrealistic to expect all classes of claims and interests to accept the plan and prevent cramdown where each plan proposes to pay unsecured creditors a maximum of 5%, while the equity retains its interests. See

---

[4] Although the Debtors have stated that the proposed treatment of RegionsBank's secured claims has been agreed to, it is not clear that any other creditor of the Debtors support the Debtors' Plans.

*Grossinger's Associates*, 116 B.R. at 36 (finding it "manifestly" unrealistic that a Debtor expected to satisfy creditors with a plan that proposed to pay unsecured creditors 10%, while the debtor's partners retain their equity interests). Where in all reasonable likelihood, solicitation of a plan will lead to confirmation by cramdown and *LaSalle* applies and is violated, "serious reorganizational possibilities" do not exist and exclusivity should be terminated. *Id*. *Grossinger's Associates*, 116 B.R. at 37; *See also*, *In re Davis*, 262 B.R. 791 (Bankr. D. Ariz. 2001) (finding that *LaSalle* applied and was violated rendering a plan unconfirmable on its face and denying any additional extension of exclusivity); *In re DN Associates*, 114 B.R. 195, fn 9 (Bankr. D. Maine 1992) (noting that filing of a Plan on the 120th day with unlikely prospects for gaining acceptances by significant creditor interests within 60 days, and with questionable prospects for its confirmation over creditor objections, and the promise of a competing plan 100% plan established cause for terminating exclusivity); 7-1121 COLLIER ON BANKRUPTCY P. 1121.05 (2010) (suggesting that "[b]ased on §1121(c)(3), a court should grant a party in interest's request to file a competing plan before the expiration of the 180-day acceptance period if the debtor files a cramdown plan within the 120-day exclusivity period allowed by section 1121(b)").

    In the cases that are before this Court, the Debtors did not file their Plans until the very last day of exclusivity. The Plans as proposed appear in all reasonable likelihood are subject to cramdown, and implicate and violate the absolute priority rule and *LaSalle*. The prospects of confirmation over creditor objections is unlikely. A competing plan exists and has been offered to the Court by way of an attachment to Colonnade's Motion, and that plan offers a benefit to all creditors and the estate. Allowing the Debtors the exclusive right to seek acceptances under the facts of this case will only serve to further delay the disposition of these cases, and allowing

competing plans will facilitate these cases moving forward.  For all of the foregoing reasons, and for those cited by Colonnade in its Exclusivity Motion, the Committee respectfully requests that the exclusivity period for seeking acceptance of a Plan pursuant to §1121(c)(3) be terminated, and an order be entered clarifying that any creditor may now file a plan due to the lapse of the Debtors' exclusivity under §1121(b), on December 3, 2010.

**WHEREFORE**, the Committee respectfully requests that Colonnade's *Motion to Terminate Debtors' Exclusive Periods to File a Plan and Disclosure Statement and Solicit Acceptances Thereof* [D.E. # 484] be granted, and for any and all such other and further relief as this Court deems just and appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via CM/ECF upon those registered parties listed on the attached Electronic Mail Notice List on this 15th day of December, 2010.

          BERGER SINGERMAN, P.A.
          Counsel to the Committee
          200 South Biscayne Boulevard, Suite 1000
          Miami, Florida 33131
          Telephone:  (305) 755-9500
          Facsimile:   (305) 714-4340

          By:   */s/ Jordi Guso*
               Jordi Guso
               jguso@bergersingerman.com
               Florida Bar No. 0863580
               Debi Evans Galler
               dgaller@bergersingerman.com
               Florida Bar No. 0985236

**Electronic Mail Notice**

Carla M Barrow on behalf of Creditor Fiddler's Creek Community Development District I and DIstrict II
cbarrow@wsh-law.com

Amanda L Barton on behalf of Creditor The ITG Tax Free Income & Capital Appreciation Fund, LTD
abarton@itgholdings.com, asanford@itgholdings.com

Paul J Battista on behalf of Accountant Soneet Kapila and Kapila & Company
pbattista@gjb-law.com, gjbecf@gjb-law.com

Jules S Cohen on behalf of Creditor COLONNADE PROPERTIES LLC
jcohen@akerman.com

Roberta A Colton on behalf of Financial Advisor Moelis & Company, LLC
racolton@trenam.com, jjcarminati@trenam.com

Robert A DeMarco on behalf of Creditor Fiddler's Creek Community Development District #2
rdemarco@swflalaw.com, fdemarco@swflalaw.com

Kathleen L. DiSanto on behalf of Creditor Glenn Vician
ecf@jennisbowen.com, jandb.ecf@gmail.com;kkearney@jennisbowen.com

W Keith Fendrick on behalf of Creditor U.S. Bank National Association, as Trustee to Fiddler's Creek Community Development District #2's Special Assessment Revenue Bonds Series 2003 A and Series 2003B
keith.fendrick@hklaw.com, andrea.olson@hklaw.com

Debi Evans Galler on behalf of Accountant Christopher Tierney
dgaller@bergersingerman.com, efile@bergersingerman.com;jalvarez@bergersingerman.com

Mariaelena Gayo-Guitian on behalf of Debtor 951 Land Holdings, LLC
mguitian@gjb-law.com, chopkins@gjb-law.com;ktoland@gjb-law.com;ablye@gjb-law.com

Alberto F Gomez on behalf of Creditor Alexander Love
algomez@morsegomez.com, awestcott@morsegomez.com;agomez@morsegomez.com

Douglas R Gonzales on behalf of Creditor Fiddler's Creek Community Development District I and DIstrict II
dgonzales@wsh-law.com

Laura Fortney Gross on behalf of Creditor Regions Bank
lgross@gunster.com, shess@gunster.com

Jordi Guso on behalf of Creditor Committee The Official Unsecured Creditors' Committee
jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com

Jennifer Hayes on behalf of Creditor c/o Mark J. Wolfson Fifth Third Bank
jhayes@foley.com, btanner@foley.com

Mark D. Hildreth on behalf of Creditor Iberiabank
mhildreth@slk-law.com, dcooper@slk-law.com

Bart A Houston on behalf of Debtor Fiddler's Creek, LLC
bhouston@gjb-law.com, cbucolo@gjb-law.com;vlambdin@gjb-law.com

John B Hutton on behalf of Creditor U.S. Bank National Association

huttonj@gtlaw.com, thompsonc@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Diane L. Jensen on behalf of Creditor Regions Bank
bankruptcy@paveselaw.com

A. Christopher Kasten on behalf of Interested Party Eric Vasquez
ckasten@bushross.com, sgraham@bushross.com;bnkecf@bushross.com

Donald R Kirk on behalf of Creditor Florida Financial Investments, Inc.
dkirk@fowlerwhite.com,
kthompson@fowlerwhite.com;anita.flowers@fowlerwhite.com;Hema.Persad@fowlerwhite.com

David M Landis on behalf of Creditor Tomen America, Inc.
dlandis@mateerharbert.com, rpinkston@mateerharbert.com;skrause@zeklaw.com;nschwed@zeklaw.com

Hywel Leonard on behalf of Creditor MUNB Loan Holdings LLC
hleon@carltonfields.com, lrodriguez@carltonfields.com;tpaecf@cfdom.net

Stephen R Leslie on behalf of Creditor Gulf Bay Capital, Inc.
sleslie.ecf@srbp.com, srbpecf@srbp.com;mclift@srbp.com

Amy E Lowen on behalf of Creditor U.S. Bank National Association
lowena@gtlaw.com, tjong@gtlaw.com;farnumj@gtlaw.com;rifkenl@gtlaw.com

Aleida Martinez-Molina on behalf of Creditor Fiddler's Creek Community Development District I and DIstrict II
amartinez@wsh-law.com, maracher@wsh-law.com

Thomas M Messana on behalf of Creditor U.S. Bank National Association as Trustee for Fiddler's Creek Community Development District #1 Special Assessment Revenue Bonds Series 2005 and District #2 Special Assess. Rev. Bonds S
tmessana@mws-law.com

Raymond V Miller on behalf of Creditor Regions Bank
rmiller@gunster.com, vyon@gunster.com

Patricia Redmond on behalf of Interested Party Aubrey Ferrao
predmond@stearnsweaver.com, rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com;jrivera@stearnsweaver.com

Michael L Schuster on behalf of Debtor Fiddler's Creek, LLC
mschuster@gjb-law.com, gjbecf@gjb-law.com

Michael P Shuster on behalf of Creditor KeyBank National Association
mshuster@porterwright.com, smueller@porterwright.com

William J Simonitsch on behalf of Creditor PEPI Capital, L.P.
bill.simonitsch@klgates.com, joyce.lieberman@klgates.com;marc.pifko@klgates.com

Paul S Singerman on behalf of Creditor Committee The Official Unsecured Creditors' Committee
singerman@bergersingerman.com, efile@bergersingerman.com;ctarrant@bergersingerman.com

Robert A. Soriano on behalf of Creditor Textron Financial Corporation
SorianoR@gtlaw.com, DevlinD@gtlaw.com

Trustee Services Inc (SM)
sm@trusteeservices.biz

Scott A Underwood on behalf of Creditor U.S. Bank National Association, solely in its capacities as trustee with regard to Fiddlers Creek Community Development District #1 Special Assessment Revenue Bonds, Series 2005 and Fiddlers Cree
sunderwood@mws-law.com, emair@mws-law.com;jcloyd@mws-law.com;mhoffman@mws-law.com;lcoffy@mws-law.com;tmessana@mws-law.com;thurley@mws-law.com;blieberman@mws-law.com;nbarrus@mws-law.com;dstern@mws-law.com;tmessana@bellsouth.net

United States Trustee - FTM
USTPRegion21.TP.ECF@USDOJ.GOV

Glenn S Vician on behalf of Creditor Glenn Vician
glennsvician2@bhbvonline.com

Jeffrey W. Warren on behalf of Creditor Banc of America Leasing & Capital, LLC
jwarren@bushross.com, mlinares@bushross.com;bnkecf@bushross.com

Edmund S Whitson on behalf of Creditor COLONNADE PROPERTIES LLC
edmund.whitson@akerman.com, kimberley.pass@akerman.com;leslie.utiger@akerman.com;kaci.long@akerman.com

J Steven Wilkes on behalf of U.S. Trustee United States Trustee - FTM
steven.wilkes@usdoj.gov

Mark J. Wolfson on behalf of Creditor c/o Mark J. Wolfson Fifth Third Bank
mwolfson@foley.com, btanner@foley.com;jhayes@foley.com

Heather L Yonke on behalf of Debtor 951 Land Holdings, LLC
hyonke@gjb-law.com, gjbecf@gjb-law.com;hburke@gjb-law.com;gjbecf@gjb-law.com