UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
www.flmb.uscourts.gov

In re:                                          Chapter 11

**FIDDLER'S CREEK, LLC**                         **Case No. 8:10-bk-03846-KRM**
951 LAND HOLDINGS, LLC                           Case No. 8:10-bk-03852-KRM
DY ASSOCIATES, LLC                               Case No. 8:10-bk-03856-KRM
GBFC DEVELOPMENT, LLC                            Case No. 8:10-bk-03864-KRM
FC MARINA, LLC                                   Case No. 8:10-bk-03872-KRM
FC BEACH, LLC                                    Case No. 8:10-bk-03873-KRM
FC GOLF, LLC                                     Case No. 8:10-bk-03875-KRM
DY LAND HOLDINGS II, LLC                         Case No. 8:10-bk-03878-KRM
FC PARCEL 73, LLC                                Case No. 8:10-bk-03881-KRM
FC COMMERCIAL, LLC                               Case No. 8:10-bk-03886-KRM
FC HOTEL, LLC                                    Case No. 8:10-bk-03888-KRM
FC RESORT, LLC                                   Case No. 8:10-bk-03896-KRM
GULF BAY HOSPITALITY COMPANY, LLC                Case No. 8:10-bk-03898-KRM
GULF BAY HOTEL COMPANY, LLC                      Case No. 8:10-bk-03905-KRM
GBP DEVELOPMENT, LLC                             Case No. 8:10-bk-03908-KRM
GB PENINSULA, LTD.                               Case No. 8:10-bk-03909-KRM
951 LAND HOLDINGS, LTD.                          Case No. 8:10-bk-03911-KRM
DY LAND ASSOCIATES, LTD.                         Case No. 8:10-bk-03918-KRM
GBFC DEVELOPMENT, LTD.                           Case No. 8:10-bk-03920-KRM
GBFC MARINA, LTD.                                Case No. 8:10-bk-03928-KRM
FC BEACH, LTD.                                   Case No. 8:10-bk-03934-KRM
FC GOLF, LTD.                                    Case No. 8:10-bk-03937-KRM
FC HOTEL, LTD.                                   Case No. 8:10-bk-03938-KRM
FC RESORT, LTD.                                  Case No. 8:10-bk-03947-KRM
GULF BAY HOSPITALITY, LTD.                       Case No. 8:10-bk-03949-KRM
GULF BAY HOTEL COMPANY, LTD.                     Case No. 8:10-bk-03950-KRM
GBP DEVELOPMENT, LTD.                            Case No. 8:10-bk-03952-KRM
FIDDLER'S CREEK MANAGEMENT, INC.,                Case No. 8:10-bk-03954-KRM

                                                **(Jointly Administered under**
         **Debtors.**                            **Case No. 8:10-bk-03846-KRM)**

_____/


**INDENTURE TRUSTEE'S MOTION TO DESIGNATE
THE DISTRICTS' ACCEPTANCES OF THE PROPOSED
TREATMENT OF THE OFF ROLL BOND DEBT SPECIAL ASSESSMENTS**


**[Expedited Hearing Requested on or before May 26, 2010]**

U.S. Bank National Association, as Indenture Trustee (the "Indenture Trustee"), with regard to the Bonds and under their respective Indentures as are shown on the attached Exhibit A, moves for entry of an order designating the acceptances of the proposed treatment of the off roll bond debt special assessment claims in connection with the *Second Amended Plans of Reorganization* identified on the attached Exhibit B (the "Plans"). In support of this Motion (the "Motion"), the Indenture Trustee respectfully states:

**Preliminary Statement**

1. The Bankruptcy Code "grants the bankruptcy court discretion to sanction any conduct that taints the voting process, whether it violates a specific provision or is in 'bad faith.'" *In re Quigley Company, Inc.*, 437 B.R. 102, 130 (Bankr. S.D.N.Y. 2010) (quoting *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.3d 94, 97 (3d Cir. 1988)). This authority is found in Section 1126(e) of the Bankruptcy Code, which provides three independent grounds to designate a creditor's vote: (i) where the creditor's vote is not made in good faith; (ii) where the creditor's vote is not "solicited or procured" in good faith; or (iii) where the creditor's vote is solicited or procured in violation of a provision of the Bankruptcy Code. In this case, the Districts[1] and the Debtors have not acted in good faith in connection with the making, or soliciting or procuring, of the Debtors' acceptances of the Off Roll Bond Debt Special Assessments classes. Those acceptances, moreover, were procured, in part, by the Debtors' Improper Solicitations, and were therefore obtained in violation of Section 1125 of the Bankruptcy Code. Accordingly, the Districts' acceptances of the Off Roll Bond Debt Special Assessments should be designated.

---

[1]     Capitalized terms used but not defined in this Preliminary Statement have the meaning ascribed to them below.

**<u>Background</u>**

**A.      Procedural Background**

2.      On February 23, 2010 (the "<u>Petition Date</u>"), the Debtors commenced the above-captioned cases by the filing of voluntary petitions for relief by each of the Debtors under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  According to the Debtors, each of them owns, operates and/or is otherwise affiliated with the "Fiddler's Creek" development located in Collier County, Florida (the "<u>Development</u>"). (*Second Amended Joint Consolidated Disclosure Statement for Plans of Reorganization of the Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* [D.E. 752] (the "<u>Disclosure Statement</u>") at 5-6.)  The Court has approved the Debtors' Disclosure Statement, and the Debtors are seeking confirmation of the Plans.

3.      Following approval of the Disclosure Statement, the Court set a hearing to consider confirmation of each of the Second Amended Joint Plans of Reorganization filed by the Debtors for May 26, 2011 and May 27, 2011 (the "<u>Confirmation Hearing</u>"), and fixed deadlines for objections to confirmation on May 12, 2011 and for replies in support of confirmation on May 19, 2011.  (*Order Granting Debtors' Motion for Entry of Order (I) Approving Second Amended Disclosure Statement; (II) Approving Solicitation Procedures; (III) Approving Forms of Ballots and Establishing Procedures for Voting on the Second Amended Plans of Reorganization; and (IV) Establishing Notice and Objection Procedures in respect of Confirmation of the Second Amended Plans of Reorganization* [D.E. 770].)  The Court also fixed May 16, 2011 as the deadline for acceptances or rejections of the Plans to be filed (the "<u>Balloting Deadline</u>").

4.     After the setting of the Confirmation Hearing and the fixing of the Balloting Deadline, the Debtor distributed the Plans, Disclosure Statement, and ballots.  The Debtors solicited the Districts to vote on, *inter alia*, the Bond Debt Special Assessments (defined below), and to cast acceptances in favor of the Debtors' proposed treatment under the Plans of the Bond Debt Special Assessments.

**B.     Bonds and Bond Debt Special Assessments**

5.     The infrastructure of the Development was financed in great part by bond indebtedness.

6.     To finance such infrastructure, local units of special purpose government were created pursuant to Chapter 190, Florida Statutes, the "Uniform Community Development District Act" (the "Act"), and, among other things, with respect to  Fiddler's Creek Community Development District 1 ("District #1"), Rule 42X-1.001-1.003, Florida Administrative Code, as amended; and with respect to  Fiddler's Creek Community Development District #2 ("District #2"; each, a "District" or a "CDD;" and together, the "Districts" or the "CDDs"), Ordinance #02-61 of the Board of County Commissioners of Collier County, Florida.

7.     The Act authorizes such community development districts to, among other things, (i)  provide public improvements and community facilities to benefit real property, (ii)  issue indebtedness, including bond indebtedness, secured by and paid from non-ad valorem special assessments, and (iii)  impose and levy non-ad valorem special assessments on real property within the district in order to repay the bond indebtedness that financed the improvements and facilities benefiting the district's real property.

8.     As provided for in the Act, District #1's Board of Supervisors duly adopted Resolution 96-16 on August 20, 1996, which authorized and approved, among other things, the Master Trust Indenture dated as of December 1, 1996 between District #1 and the Indenture

Trustee (as supplemented and amended from time to time in accordance with its terms, the "District #1 Master Indenture"), and the issuance of special assessment revenue bonds in one or more series under the District #1 Master Indenture.

9.     District #1 issued and sold special assessment revenue bonds pursuant to its Resolution 96-16 and the District #1 Master Indenture, and related resolutions and documents. Bonds issued by District #1 and remaining outstanding are shown on Exhibit A (the "District #1 Bonds").

10.     Similarly, District #2's Board of Supervisors duly adopted Resolution 2003-15 on December 2, 2002, which authorized and approved, among other things, the Master Trust Indenture dated as of June 1, 2003 between District #2 and the Indenture Trustee (as supplemented and amended from time to time in accordance with its terms, the "District #2 Master Indenture"), and the issuance of special assessment revenue bonds in one or more series under the District #2 Master Indenture.

11.     District #2 issued and sold special assessment revenue bonds pursuant to its Resolution 2003-15 and the District #2 Master Indenture, and related resolutions and documents. Bonds issued by District #2 and remaining outstanding are shown on Exhibit A (the "District #2 Bonds" and collectively with the District #1 Bonds, the "Bonds").

12.     The Bonds issued by each of the Districts funded public improvements that benefit the residents and properties within the respective District, such as roadways, utilities, earthwork and clearing, water and storm water management, roadway lighting, landscaping, security, wetlands mitigation and monitoring, irrigation, and other infrastructure and improvements.

13.     The Bonds are secured by, and paid from, special assessments (the "Bond Debt Special Assessments") levied by the issuing District on the real property within the District benefitted by the Bond-financed infrastructure and improvements.  Pursuant to Section 170.09 of the Florida Statutes, the Bond Debt Special Assessments constitute liens upon the assessed land coequal with the lien of all state, county, district, and municipal liens, superior in dignity to all other liens, titles, and claims, until paid.

14.     Both pre- and post-petition, the Debtors failed to pay Bond Debt Special Assessments levied by the Districts upon their properties.  Accordingly, such unpaid Bond Debt Special Assessments are due and outstanding to the Districts, which in turn are indebted to the Indenture Trustee on behalf of the holders of the Bonds (the "Bondholders").  The properties of such Debtors are subject to the liens of the Bond Debt Special Assessments, levied by the Districts and pledged by the Districts to the Indenture Trustee, for the benefit of the Bondholders, to secure the payment of the principal of and interest on the Bonds.

**C.      Districts' Proofs of Claims**

15.     The Districts filed proofs of claim against the nine Debtors that own real property subject to the liens of unpaid Bond Debt Special Assessments:  951 Land Holdings, Ltd.; DY Land Holdings II, LLC; DY Land Associates, Ltd.; FC Commercial, LLC; FC Golf, Ltd.; FC Parcel 73, LLC; GB Peninsula, Ltd.; GBP Development, Ltd.; and GBFC Development, Ltd.

16.     All specific information in this motion as to the Bond Debt Special Assessments owed by the Debtors to the Districts as of the Petition Date, including without limitation the series of Bonds, the amounts of principal and interest, etc., is based upon information provided by the Districts' consultant in connection with the Districts' proofs of claim, and the Indenture Trustee's rights are reserved accordingly.  Although some of the Districts' proofs of claims

included special assessments other than the Bond Debt Special Assessments, only the Bond Debt Special Assessments are considered by the Indenture Trustee herein.

**D.      "Off Roll" versus "On Roll"**

17.      The Districts may collect Bond Debt Special Assessments directly from landowners, in which case such assessments are considered "<u>off roll</u>."   As an alternative, the Districts may arrange for Collier County to collect the Bond Debt Special Assessments in conjunction with the County's collection of real estate taxes, in which case such assessments are considered "<u>on roll</u>."   The difference between "off roll" Bond Debt Special Assessments and "on roll" Bond Debt Special Assessments is solely as to the collection procedure and not as to lien priority or statutory rights.   The Debtors have not disclosed any reason to provide different treatment of their unpaid Bond Debt Special Assessments based upon whether such Bond Debt Special Assessments are collected "off roll" or "on roll" other than the mere procedural inability to delay payment to the county tax collector for Collier County for the "on roll" assessments.

18.      Whether Bond Debt Special Assessments are "off roll" or "on roll" <u>does not affect</u> either the Debtors' obligations to pay the Bond Debt Special Assessments to the Districts, or the Districts obligations to pay the amounts due with regard to the Bonds to the Indenture Trustee.   Debtors' Plans regarding the "off roll" Bond Debt Special Assessments is simply a ruse using the complicit Districts o put off payment as long as possible.

**E.      The O&M Claims**

19.      Each of the Districts is funded through special assessments known as "operating and maintenance" assessments (the "<u>O&M Claims</u>") that are distinct from the Bond Debt Special Assessments.   Revenues from the O&M Claims fund the operations and of the Districts.   The Plans classify the O&M Claims separately from Bond Debt Special Assessments and propose to

pay all arrearages on the O&M Claims current on the effective date of the Plans and to pay O&M claims currently following the effective date.

**F.     The Districts' Meeting and the Improper Solicitations**

20.     Following the Debtors' solicitation of the Districts' acceptances with respect to the Bond Debt Special Assessments, the Districts conducted a "joint public meeting" on April 18, 2011 (the "District Meeting").  The ostensible purpose of the District Meeting was to allow "the Debtors, the Indenture Trustees, the Official Unsecured Creditors Committee and members of the Fiddler's Creek community and/or their counsel or representatives to appear before the [Districts] to provide information, ask questions, and express their opinions, concerns, perspectives, and positions regarding the [Plans]."  (*See Notice to Interested Parties of a Joint Public Meeting of the Boards of Supervisors of Fiddler's Creek Community Development District Numbers 1 and 2 on April 18, 2011 at 8:00 a.m.* [D.E. 784] at 2.)

21.     However, as is more fully discussed in the *Indenture Trustee's Motion for Entry of an Order (A) Determining that the Debtors have Improperly Solicited the Homeowners of Fiddler's Creek and (B) Granting Related Relief* [D.E. 1184] (the "Improper Solicitation Motion"), the Debtors made multiple improper solicitations of the homeowners of Fiddler's Creek for the transparent purpose of influencing the homeowners to cause the Districts to vote in favor of the Plans with respect to the treatment of the Bond Debt Special Assessments, against the wishes of the Bondholders who are negatively impacted by such impaired treatment.  The Improper Solicitation achieved its intended effect, in that hundreds of homeowners attended the District Meeting and urged the Districts to vote in favor of the Plans, not just on the O&M Claims, but on the Bond Debt Special Assessments as well.

### G.   The Districts' Vote and the Injunction Proceeding

22.   After the District Meeting, the Districts scheduled further meetings to determine how to vote on the Plans.  District #2 scheduled (and conducted) an executive session for May 5, 2011, and a public hearing for May 12.  On information and belief, at the May 12th meeting, District #2 directed its counsel to cast acceptance ballots on the Bond Debt Special Assessments. District #1 scheduled a public hearing for May 11 (no executive session has been scheduled). On information and belief, at the May 11th meeting, District #1 also directed its counsel to cast acceptance ballots on the Bond Debt Special Assessments (by a 3-2 vote).

23.   In advance of these public meetings, on May 3, 2011, the Indenture Trustee directed the Districts to reject the Plans with respect to the Bond Debt Special Assessments.  The Districts have not responded to this demand, but counsel for District #2 advised his board that District #2 is not required to vote as the Bondholders direct.

24.   Accordingly, on May 9, 2011, the Indenture Trustee commenced an adversary proceeding to, *inter alia*, enjoin the Districts from voting to accept the Plans with respect to the Bond Debt Special Assessments (the "Injunction Proceeding").  In connection with the Injunction Proceeding, the Indenture Trustee has sought a temporary restraining order ("TRO") and a preliminary injunction to prevent the Districts from filing acceptances during the pendency of the Injunction Proceeding so as to preserve the *status quo* and prevent irreparable harm to the Bondholders.  At the hearing on May 11, 2011, the Court denied the request for a TRO, based in part on the finding that the Indenture Trustee has other adequate remedies, including the ability to seek to designate the vote of the Districts under Section 1126(e) of the Bankruptcy Code.

25.   On information and belief, the Districts have submitted to the Debtors acceptances of the proposed treatment of the Off Roll Bond Debt Special Assessments.

**Relief Requested**

26.     The Indenture Trustee respectfully requests entry of an order designating the acceptances of the Off Roll Bond Debt Special Assessments made by the Districts.

**Basis for Relief Requested**

27.     The Bankruptcy Code "grants the bankruptcy court discretion to sanction any conduct that taints the voting process, whether it violates a specific provision or is in 'bad faith.'" *Quigley Company*, 437 B.R. at 130 (Bankr. S.D.N.Y. 2010) (quoting *Century Glove*, 860 F.2d at 97). Specifically, section 1126(e) of the Bankruptcy Code provides:

> On the request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

Thus, by its plain language, Section 1126(e) provides three independent grounds upon which a bankruptcy court may designate an acceptance or rejection of a creditor, namely:

> (i)     The creditor's acceptance or rejection was not in good faith;
>
> (ii)    The creditor's acceptance or rejection was not solicited or procured in good faith; or
>
> (iii)   The creditor's acceptance or rejection was not solicited or procured in accordance with the provisions of the Bankruptcy Code.

Although designation is "the exception, not the rule," and the proponent of designation bears the burden of proof to show designation is warranted, *In re DBSD North American, Inc.*, 634 F.3d 79, 101-02 (2d Cir. 2011), each of these three independent grounds are in the disjunctive and therefore the presence of any one of the three is sufficient to designate a creditor's acceptance.

**A.     The Districts' acceptances of the Off Roll Bond Debt Special Assessments should be designated because those acceptances were not made good faith.**

28.     The bankruptcy court may designate a creditor's acceptance when that acceptance is not made in good faith. 11 U.S.C. § 1126(e). The Bankruptcy Code does not define "good

faith." *In re Figter Ltd.*, 118 F.3d 635, 638 (9th Cir. 1997). Courts agree, however, a vote is not in good faith when cast with an ulterior motive in aid of an interest other than an interest as a creditor of the claim voted. *See*, *e.g.*, *DBSD North America*, 634 F.3d at 102 (a vote may be designated when the creditor "votes with an 'ulterior motive,' that is, with 'an interest other than an interest as a creditor'") (quoting *In re P-R Holding Corp.*, 118 F.3d 895, 897 (2d Cir. 1945) (internal citations omitted). Here, the Districts voted their acceptances of the Bond Debt Special Assessment claims with an ulterior motive in aid of an interest other than their interest as a holder of those claims, and, accordingly, those acceptances should be designated.

29.     The Districts ulterior motive is obvious: to advance the interests of the homeowners and maximize the treatment of the O&M Claims at the expense of the Bond Debt Special Assessment claims. That the Districts voted acceptances of the Bond Debt Special Assessment claims not as holders of those claims but to advance the interests of the homeowners and to maximize the Districts' recovery on the O&M Claims is shown by the fact that the Districts never attempted to negotiate better treatment for the Bond Debt Special Assessment claims, even though the Plans provide for negative amortization of those claims—including in many cases deferral for two years. No other claims treated under the Plans are negatively amortized. The O&M Claims are made current on the effective date of the Plans and paid currently thereafter. The Districts have voted so that, as to claims where the Districts have the financial stake—the O&M Claims, the Districts' arrearages are paid on the effective date and the Districts' future assessments are paid currently, but, as to claims where the Bondholders have the financial stake—Bond Debt Special Assessments, the Bondholders' do not even receive a single payment in many cases until two years after the effective date. Moreover, the fact that the Districts voted the Bond Debt Special Assessment claims not as holders of those claims but to

further the interests of the homeowners and maximize the recovery of the O&M Claims is shown by the Districts efforts to manufacture pretextual grounds and processes to "justify" that vote.

30.     The Districts' acceptances of the Off Roll Bond Debt Special Assessment claims is wholly unlike and distinguishable from cases where bankruptcy courts have allowed creditors with multiple claims in a debtor's capital structure to vote each claim in the creditor's self interest so as to maximize the creditor's overall return. *See*, *e.g.*, *In re Adelphia Communications Corp.*, 359 B.R. 54, 63 (Bankr. S.D.N.Y. 2006). The reason these cases are distinguishable is simple: the Districts, unlike the creditors in the *Adelphia* case for example, owe fiduciary and contractual duties to the Bondholders to defend, preserve, and protect the Bond Debt Special Assessments, the Bondholders' pledge of the revenues from the Bond Debt Special Assessments, and the rights generally of the Bondholders. By contrast, the creditors in cases like the *Adelphia* case own their claims without duties to other creditors or other parties. When they "sacrifice" one of those claims to maximize their total return, they are sacrificing a claim in which they hold the financial interest in aid of maximizing their total return on other claims in which they hold the financial interest, and they are therefore deemed to acted not in aid of an interest other than an interest as a creditor of the claim voted. Put simply, the Districts are sacrificing the Bond Debt Special Assessments because they do not have the ultimate financial interest in those assessments, notwithstanding their duties to defend, preserve, and protect those assessments, with the transparent ulterior motive of advancing the interests of the homeowners and maximizing the returns on the O&M Claims.

31.     Accordingly, the Districts voted acceptances of the Off Roll Bond Debt Special Assessments not in good faith, and those acceptances should be designated.

**B.** **The Districts' acceptances of the Off Roll Bond Debt Special Assessments should be designated because those acceptances were procured by the Debtors not in good faith.**

32.     Although the reported decisions typically analyze the voting creditor's motive, the plain language of the statute unquestionably reaches—and sanctions—designation of a creditor's acceptance where that acceptance is "solicited or procured" not in good faith.  *See* 11 U.S.C. § 1126(e); *Quigley*, 437 B.R. at 103 (Section 1126(e) "provides a basis to designate, without regard to the creditor's motive, where the vote is 'solicited or procured' not in good faith; *held* creditor's acceptance designated where debtor procured the acceptance not in good faith).  A creditor's acceptance may be designated "without regard to the creditor's motive" so long as the debtor attempted to procure, *i.e.*, "get[] or obtain[]," the acceptance not in good faith.  *Quigley*, 437 B.R. at 103 & 132 (quoting Black's Law Dictionary 1327 (9th ed. 2009)).

33.     The Districts' acceptances of the Off Roll Bond Debt Special Assessment claims were not procured in good faith.[2]  Rather, these acceptances are the consummation of the Debtors' strategy to in effect restructure the Bonds over the objections of the Bondholders—the Debtors' most senior secured debt and the source of financing that made the Development possible—and to do so while denying the Bondholders the key protections of the Bankruptcy Code—a vote or a cram down hearing—and while engaging in favorable self-dealing with insiders and related entities.

34.     Accordingly, even if the Court finds that the Districts did not accept the Off Roll Bond Debt Special Assessments not in good faith, the Districts' acceptances of the Off Roll

---

[2]     The Debtors' lack of good faith in procuring the Districts' acceptances of the Off Roll Bond Debt Special Assessments is fully demonstrated in the Indenture Trustee's confirmation objection.  (*Indenture Trustee's Objection to Confirmation of the Second Amended Plans of Reorganization* [D.E. 1224] ¶¶ 29-42.)  In the interests of economy, that portion of the confirmation objection is incorporated by reference in this Motion, which summarizes the confirmation objection's main points.

Bond Debt Special Assessments can and should be designated because the Debtors procured those acceptances not in good faith.

**C. The Districts' acceptances of the Off Roll Bond Debt Special Assessments should be designated because those acceptances were solicited or procured in violation of Section 1125.**

35.     An acceptance may be designated where it was solicited or procured in violation of a provision of title 11, notwithstanding the good faith, or the lack thereof, exercised by a creditor in voting an acceptance, or the debtor in soliciting or procuring the creditor's acceptance. *See* 11 U.S.C. § 1126(e); *In re Media Central, Inc.*, 89 B.R. 685, 690 ("When votes on a plan have not been solicited in accordance with the provisions of title 11, the court may disallow such votes after notice and a hearing.").  Where a debtor violates Section 1125 of the Bankruptcy Code by making an improper solicitation, that violation runs afoul of Section 1126(e) and is a sufficient basis to designate the solicited vote.  *Media Central*, 89 B.R. at 691 ("Failure to obtain beforehand a judicial ruling on the propriety of statements or information sent in conjunction with a vote solicitation may lead to a vote disqualification after the fact if it is later determined that the statements or information were improper and the solicitation in bad faith.").

36.     The Districts' acceptances of the Off Roll Bond Debt Special Assessments were not solicited or procured in accordance with the provisions of the Bankruptcy Code because the Improper Solicitations violated Section 1125.[3]  The Improper Solicitations have contradicted the Disclosure Statement and mislead or mischaracterized (at a minimum) the following material facts:

---

[3]     The violation of Section 1125 of the Bankruptcy Code by virtue of the Improper Solicitations is fully demonstrated in the Improper Solicitation Motion.  (Improper Solicitation Motion ¶¶ 19-34.)  In the interests of economy, that portion of the Improper Solicitation Motion is incorporated by reference in this Motion, which summarizes the main points.

... that the Bond Debt Special Assessments will be paid "in full with interest" when the amortization schedules attached to the Disclosure Statement show that the Bond Debt Special Assessments will in fact receive deferred cash payments with a discount rate less than the coupon rate on the Bonds;

... that the Bond Debt Special Assessments will be paid "in full with interest" without explaining (as the Disclosure Statement does) that the Districts will remain in default to the Bondholders and subject to the Bondholders' rights and remedies;

... that without confirmation of the Plans the Fiddler's Creek communities "survival" is at stake without explaining (as the Disclosure Statement does) alternatives exist should the Plans not be confirmed; and

... that homeowners' actual claims are treated in only two of the Debtors' eleven Plans, without making any distinction (as the Disclosure Statement does) between the eleven Plans or describing (as the Disclosure Statement does) that some of the Plans may be confirmed even if other of the Plans are not.

These, and other, misleading statements and mischaracterizations of fact and law contained in the Improper Solicitations violated Section 1125 of the Bankruptcy Code. *See In re Mirant Corporation*, 334 B.R. 787, 792 (Bankr. N.D.Tex. 2005) (a post-disclosure-statement solicitation violates Section 1125 where the solicitation contains misleading statements or mischaracterizations of fact or law).

37. Accordingly, because the Districts' acceptances of the Off Roll Bond Debt Special Assessments were not solicited or procured in accordance with the provisions of the Bankruptcy Code, they should be designated.

## Conclusion

38. For all the foregoing reasons, the conduct of the Debtors and the Districts have tainted the voting process in connection with the Districts' acceptances of the Off Roll Bond Debt Special Assessment claims. The Court should invoke the power granted to it under Section 1126(e) of the Bankruptcy Code to remedy this taint and designate those acceptances.

WHEREFORE, the Indenture Trustee respectfully requests entry of an order designating the acceptances of the Off Roll Bond Debt Special Assessments made by the Districts and such additional and further relief as the Court deems just and proper.

Dated May 18, 2011.

Warren S. Bloom, Esq.
Florida Bar #: 838616
Email: bloomw@gtlaw.com
Amy E. Lowen, Esq.
Florida Bar #: 0492248
Email: lowena@gtlaw.com
GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 650
Orlando, FL 32801
Phone: (407) 420-1000
Facsimile: (407) 420-5909

Thomas M. Messana, Esq.
Florida Bar No. 991422
MESSANA, P.A.
401 East Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
Phone: (954) 712-7400
Facsimile: (954) 712-7401
Email: tmessana@messana-law.com

BY:  /s/ Thomas M. Messana
      THOMAS M. MESSANA

John B. Hutton
Florida Bar # 902160
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
Miami, FL 33131
Phone (305) 579-0500
Facsimile: (305) 579-0717
Email: huttonj@gtlaw.com

BY:  /s/ John B. Hutton
      JOHN B. HUTTON

W. Keith Fendrick
Florida Bar # 612154
HOLLAND & KNIGHT LLP
P.O. Box 1288
Tampa, FL 33601-1288
Phone (813) 227-6707
Facsimile: (813) 229-0134
Email: keith.fendrick@hklaw.com

BY:       /s/ W. Keith Fendrick
      W. KEITH FENDRICK

# CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2011, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. Mail, postage prepaid, on May 19, 2011, for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

  /s/  John B. Hutton
  JOHN B. HUTTON

## Electronic Mail Notice List

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

Amanda L Barton on behalf of Creditor The ITG Tax Free Income & Capital Appreciation Fund, LTD abarton@itgholdings.com, asanford@itgholdings.com

Paul J Battista on behalf of Accountant Soneet Kapila and Kapila & Company pbattista@gjb-law.com, gjbecf@gjb-law.com

Jules S Cohen on behalf of Creditor COLONNADE PROPERTIES LLC jcohen@akerman.com

Roberta A Colton on behalf of Financial Advisor Moelis & Company, LLC racolton@trenam.com, jjcarminati@trenam.com

Robert A DeMarco on behalf of Creditor Fiddler's Creek Community Development District #2 rdemarco@swflalaw.com, fdemarco@swflalaw.com

Kathleen L. DiSanto on behalf of Creditor Glenn Vician ecf@jennisbowen.com, jandb.ecf@gmail.com;kkearney@jennisbowen.com

W Keith Fendrick on behalf of Creditor U.S. Bank National Association, as Trustee to Fiddler's Creek Community Development District #2's Special Assessment Revenue Bonds Series 2003 A and Series 2003B keith.fendrick@hklaw.com, andrea.olson@hklaw.com

Debi Evans Galler on behalf of Accountant Christopher Tierney dgaller@bergersingerman.com, efile@bergersingerman.com;jalvarez@bergersingerman.com

Mariaelena Gayo-Guitian on behalf of Accountant Soneet Kapila and Kapila & Company mguitian@gjb-law.com, chopkins@gjb-law.com;ktoland@gjb-law.com;ablye@gjb-law.com

Alberto F Gomez on behalf of Creditor Alexander Love algomez@morsegomez.com, awestcott@morsegomez.com;agomez@morsegomez.com

Douglas R Gonzales on behalf of Creditor Fiddler's Creek Community Development District I dgonzales@wsh-law.com

Rachel S Green on behalf of Defendant Naples Landing Group, L.C. rgreen@forizs-dogali.com, rbrown@forizs-dogali.com;jewusiak@forizs-dogali.com

Laura Fortney Gross on behalf of Creditor Regions Bank lgross@gunster.com, jhoppel@gunster.com

Jordi Guso on behalf of Creditor Committee The Official Unsecured Creditors' Committee jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com

Jennifer Hayes on behalf of Creditor c/o Mark J. Wolfson Fifth Third Bank jhayes@foley.com, btanner@foley.com

Mark D. Hildreth on behalf of Creditor Iberiabank mhildreth@slk-law.com, dcooper@slk-law.com

Bart A Houston on behalf of Debtor Fiddler's Creek, LLC bhouston@gjb-law.com, cbucolo@gjb-law.com;vlambdin@gjb-law.com

John B Hutton on behalf of Creditor U.S. Bank National Association huttonj@gtlaw.com, thompsonc@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Diane L. Jensen on behalf of Creditor Regions Bank bankruptcy@paveselaw.com

A. Christopher Kasten on behalf of Creditor Steve Taub ckasten@bushross.com, sgraham@bushross.com

Donald R Kirk on behalf of Creditor Florida Financial Investments, Inc. dkirk@fowlerwhite.com, kthompson@fowlerwhite.com;anita.flowers@fowlerwhite.com;Hema.Persad@fowlerwhite.com

David M Landis on behalf of Creditor Tomen America, Inc. dlandis@mateerharbert.com, rpinkston@mateerharbert.com;skrause@zeklaw.com;nschwed@zeklaw.com

Hywel Leonard on behalf of Creditor MUNB Loan Holdings LLC hleon@carltonfields.com, lrodriguez@carltonfields.com;tpaecf@cfdom.net

Stephen R Leslie on behalf of Creditor Gulf Bay Capital, Inc. sleslie.ecf@srbp.com, srbpecf@srbp.com;mclift@srbp.com

Angelina E Lim on behalf of Plaintiff MMA Financial CDD Sponsor, LLC angelinal@jpfirm.com, barbarab@jpfirm.com;minervag@jpfirm.com

Amy E Lowen on behalf of Creditor U.S. Bank National Association lowena@gtlaw.com, tjong@gtlaw.com;farnumj@gtlaw.com;rifkenl@gtlaw.com

Michael C Markham on behalf of Plaintiff MMA Financial CDD Sponsor, LLC mikem@jpfirm.com, barbarab@jpfirm.com;minervag@jpfirm.com;angelinal@jpfirm.com

Aleida Martinez-Molina on behalf of Creditor Fiddler's Creek Community Development District I amartinez@wsh-law.com, maracher@wsh-law.com

Thomas M Messana on behalf of Creditor U.S. Bank National Association as Trustee for Fiddler's Creek Community Development District #1 Special Assessment Revenue Bonds Series 2005 and District #2 Special Assess. Rev. Bonds S tmessana@mws-law.com, sunderwood@mws-law.com;blieberman@mws-law.com;emair@mws-law.com;nbarrus@mws-law.com;thurley@mws-law.com

Raymond V Miller on behalf of Creditor Regions Bank rmiller@gunster.com, vyon@gunster.com

Alan J Perlman on behalf of Creditor PEPI Capital, L.P. aperlman@ralaw.com, msaez@ralaw.com;aalu@adorno.com

Patricia Redmond on behalf of Creditor Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. predmond@stearnsweaver.com, rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com;jrivera@stearnsweaver.com

Ricardo A Reyes on behalf of Defendant GB 31, Inc. rar@tobinreyes.com, april@tobinreyes.com

Michael L Schuster on behalf of Debtor Fiddler's Creek, LLC mschuster@gjb-law.com, gjbecf@gjb-law.com

William J Simonitsch on behalf of Creditor PEPI Capital, L.P. bill.simonitsch@klgates.com, joyce.lieberman@klgates.com;marc.pifko@klgates.com

Paul S Singerman on behalf of Creditor Committee The Official Unsecured Creditors' Committee singerman@bergersingerman.com, efile@bergersingerman.com;ctarrant@bergersingerman.com

Robert A. Soriano on behalf of Creditor Textron Financial Corporation SorianoR@gtlaw.com, DevlinD@gtlaw.com

Trustee Services Inc (SM) sm@trusteeservices.biz

Scott A Underwood on behalf of Creditor U.S. Bank National Association, solely in its capacities as trustee with regard to Fiddlers Creek Community Development District #1 Special

Assessment Revenue Bonds, Series 2005 and Fiddlers Creek sunderwood@mws-law.com, emair@mws-law.com;lcoffy@mws-law.com;tmessana@mws-law.com;thurley@mws-law.com;blieberman@mws-law.com;nbarrus@mws-law.com;dstern@mws-law.com;tmessana@bellsouth.net

United States Trustee - FTM USTPRegion21.TP.ECF@USDOJ.GOV

Glenn S Vician on behalf of Creditor Glenn Vician glennsvician2@bhbvonline.com

Jeffrey W. Warren on behalf of Creditor Banc of America Leasing & Capital, LLC jwarren@bushross.com, mlinares@bushross.com;bnkecf@bushross.com

J Steven Wilkes on behalf of U.S. Trustee United States Trustee - FTM steven.wilkes@usdoj.gov

Mark J. Wolfson on behalf of Creditor c/o Mark J. Wolfson Fifth Third Bank mwolfson@foley.com, btanner@foley.com;jhayes@foley.com

Heather L Yonke on behalf of Debtor 951 Land Holdings, LLC hyonke@gjb-law.com, gjbecf@gjb-law.com;hburke@gjb-law.com;gjbecf@gjb-law.com

## **Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid, :

Paul S. Singerman, Esq.
Unsecured Creditors Committee
Berger Singerman
200 South Biscayne Boulevard
Miami, FL  33131-5308

Fiddler's Creek, LLC *et al.*
8156 Fiddler's Creek Parkway
Naples, Florida  34114

Fiddler's Creek, LLC *et al.*
3200 Tamiami Trail N.
Suite 200
Naples, Florida  34103

Avalon Risk Associates, Inc.
240 Cedar Knolls Road, Ste. 308
Cedar Knolls, NJ 07927

J. Steven Wilkes, Esq.
Office of the U.S. Trustee
501 East Polk Street
Tampa, Florida  33602

John and Val Enghauser
3792 Mahogany Bend Drive
Naples, Florida  34114-623

Fiddler's Debt Investor LLC
623 Fifth Avenue
18th Floor
New York, NY 10022

Fishkind & Assocs., Inc.
Henry H. Fishkind, Ph.D.
12051 Corporate Blvd.
Orlando, FL 32817

KeyBank National Association
c/o Michael P. Shuster
Porter, Wright, Morris & Arthur LLP
9132 Strada Place, 3rd Floor
Naples, FL 34108-2683

Glen and Kathleen Metelmann
9026 Cascada Way #201
Naples, Florida  34114-6458

Kimberly A Potter on behalf of
Creditor Varenna Condominium
Association, Inc.
McCumber Daniels Buntz Hartig
Puig, PA
One Urban Centre
4830 West Kennedy Blvd, Ste 300
Tampa, FL 33609

Douglas J. Rillstone, Esq.
Broad and Cassel
215 South Monroe Street
Suite 400
Tallahassee, Florida  32301

Daniel Sussman
307 Saddlebrook Lane
Naples, FL 34110

Mark Woodward on behalf of Debtor
Fiddler's Creek, LLC
Woodward,Pires & Lombardo PA
3200 Tamiami Trail N.
Suite 200
Naples, FL 34103

**Exhibit A**

**The Bonds and the Indentures**

U.S. Bank National Association serves as the ultimate successor trustee (the "Indenture Trustee"), with regard to each of the following bond issuances (collectively, the "Bonds") and under their respective indentures (collectively, the "Indentures;" all Indentures are as they may have been supplemented and/or amended from time to time in accordance with their terms):

...    **Fiddler's Creek Community Development District Special Assessment Revenue Bonds, Series 1999A** and **Fiddler's Creek Community Development District Special Assessment Revenue Bonds, Series 1999B,** issued pursuant to that Master Trust Indenture, dated as of December 1, 1996, by and between Fiddler's Creek Community Development District and the Indenture Trustee (the "CDD #1 Master Indenture"), as supplemented by that Second Supplemental Indenture, dated as of May 1, 1999, by and between Fiddler's Creek Community Development District and the Indenture Trustee;

...    **Fiddler's Creek Community Development District Special Assessment Revenue Bonds, Series 2002A** and **Fiddler's Creek Community Development District Special Assessment Revenue Bonds, Series 2002B,** issued pursuant to the CDD #1 Master Indenture, as supplemented by that Fourth Supplemental Indenture, dated as of March 1, 2002, by and between Fiddler's Creek Community Development District and the Indenture Trustee;

...    **Fiddler's Creek Community Development District 1 Special Assessment Revenue Bonds, Series 2005,** issued pursuant to the CDD #1 Master Indenture, as supplemented by that Fifth Supplemental Indenture, dated as of December 1, 2005, by and between Fiddler's Creek Community Development District 1 and the Indenture Trustee;

...    **Fiddler's Creek Community Development District 1 Special Assessment Revenue Refunding Bonds, Series 2006,** issued pursuant to the CDD #1 Master Indenture, as supplemented by that Fifth Supplemental Trust Indenture, dated as of November 1, 2006, by and between Fiddler's Creek Community Development District 1 and the Indenture Trustee;

... **Fiddler's Creek Community Development District #2 Special Assessment Revenue Bonds, Series 2003A** and those **Fiddler's Creek Community Development District #2 Special Assessment Revenue Bonds, Series 2003B,** issued pursuant to that Master Trust Indenture, dated as of June 1, 2003, by and between Fiddler's Creek Community Development District #2 and the Indenture Trustee (the "<u>CDD #2 Master Indenture</u>"), as supplemented by that First Supplemental Indenture, dated as of June 1, 2003, by and between Fiddler's Creek Community Development District #2 and the Indenture Trustee;

... **Fiddler's Creek Community Development District #2 Special Assessment Revenue Bonds, Series 2004,** issued pursuant to the CDD #2 Master Indenture, as supplemented by that Second Supplemental Indenture, dated as of November 1, 2004, by and between Fiddler's Creek Community Development District #2 and the Indenture Trustee;

... **Fiddler's Creek Community Development District #2 Special Assessment Revenue Bonds, Series 2005,** issued pursuant to the CDD #2 Master Indenture, as supplemented by that Third Supplemental Indenture, dated as of December 1, 2005, by and between Fiddler's Creek Community Development District #2 and the Indenture Trustee.

**Exhibit B**

**The Plans Proposing to Restructure the Bond Debt Special Assessments**

... Second Amended Joint Plan of Reorganization for 951 Land Holdings, Ltd. and 951 Land Holdings, LLC Pursuant to Chapter 11 of the United States Bankruptcy Code [D.E. 762].

... Second Amended Joint Plan of Reorganization for DY Land Holdings II, LLC, FC Commercial, LLC and FC Parcel 73, LLC Pursuant to Chapter 11 of the United States Bankruptcy Code [D.E. 754].

... Second Amended Joint Plan of Reorganization for DY Land Associates, Ltd. and DY Land Associates, LLC Pursuant to Chapter 11 of the United States Bankruptcy Code [D.E. 755].

... Second Amended Joint Plan of Reorganization for FC Gold, Ltd. and FC Golf, LLC Pursuant to Chapter 11 of the United States Bankruptcy Code [D.E. 764].

... Second Amended Joint Plan of Reorganization for GB Peninsula, Ltd. Pursuant to Chapter 11 of the United States Bankruptcy Code [D.E. 756].

... Second Amended Joint Plan of Reorganization for GBP Development, Ltd. and GBP Development, LLC Pursuant to Chapter 11 of the United States Bankruptcy Code [D.E. 763].