# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Case No. 9:10-bk-03846-~~ALP~~ *Krm*

**FIDDLER'S CREEK, LLC, et al.**

**Chapter 11**

**Debtors.**

_____/

## SEVENTH INTERIM ORDER PURSUANT TO SECTIONS 361, 363, 364(C) AND (D) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING (A) DEBTORS IN POSSESSION TO OBTAIN SENIOR SECURED POST-PETITION FINANCING, (B) GRANTING CERTAIN PRIMING LIENS, (C) APPROVING AGREEMENTS RELATING TO THE FOREGOING, (D) MODIFYING THE AUTOMATIC STAY, (E) GRANTING SUPER-PRIORITY ADMINISTRATIVE CLAIM STATUS, (F) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION THEREFOR, (G) SCHEDULING A FINAL HEARING, AND (H) PRESCRIBING FORM AND MANNER OF NOTICE WITH RESPECT THERETO

**THIS MATTER** came before the Court on **May 27, 2011 at 1:30 p.m.** (the "Seventh Interim Hearing") upon a seventh evidentiary hearing on (i) the *Emergency* Motion For Entry Of Interim And Final Orders pursuant to Sections 361, 363, 364(C) And (D) Of The Bankruptcy Code And Rule 4001 Of The Federal Rules Of Bankruptcy Procedure Authorizing (A) Debtors In Possession To Obtain Senior Secured Post-Petition Financing, (B) Granting Certain Priming Liens, (C) Approving Agreements Relating To The Foregoing, (D) Modifying The Automatic Stay, (E) Granting Super-Priority Administrative Claim Status, (F) Authorizing Use Of Cash Collateral And Granting Adequate Protection Therefor, (G) Scheduling A Final Hearing, And (H) Prescribing Form And Manner Of Notice With Respect Thereto (the "DIP Motion")[D.E. #10], filed by Fiddler's Creek, LLC and 27 of its affiliated and subsidiary debtors-in-possession (collectively, the

"Debtors"),[1] seeking entry of a Seventh Interim Order (this "Seventh Interim Order") in respect of the DIP Motion. With respect to the DIP Motion and this Seventh Interim Order, the Debtors seek authority, *inter alia*, to:

(i)     enter into the DIP Loan pursuant to the Commitment Letter and the DIP Loan Documents,[2] including that certain Debtor-in-Possession Credit and Security Agreement, by and among Fiddler's Creek LLC and GB Peninsula, Ltd (collectively, the "Borrowers"), the guarantors party thereto[3] (collectively, the "Guarantors"), and Gulf Bay Capital, Inc. as the DIP Lender (the "DIP Lender"), dated as of March 3, 2010 (the "DIP Loan Agreement"), the execution copy of such DIP Loan Agreement and certain other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the DIP Lender in connection therewith, including, without limitation, a loan and security agreement, guaranty agreements, notes, mortgages, deeds of trust, Uniform Commercial Code ("UCC") financing statements, and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as each may be amended, restated, modified or supplemented and in effect from time to time, the "DIP Loan Documents") having been filed by the Debtors under a Notice of Filing, dated April 23, 2010 (C.P. #157)

---

[1]     The Debtors in these jointly administered proceedings are: (i) Fiddler's Creek, LLC; (ii) 951 Land Holdings, LLC; (iii) 951 Land Holdings, Ltd.; (iv) DY Associates, LLC; (v) DY Land Associates, Ltd.; (vi) FC Beach, LLC; (vii) FC Beach, Ltd.; (viii) FC Golf, LLC; (ix) FC Golf, Ltd.; (x) FC Hotel, LLC; (xi) FC Hotel, Ltd.; (xii) FC Marina, LLC; (xiii) FC Resort, LLC; (xiv) FC Resort, Ltd.; (xv) Fiddler's Creek Management, Inc.; (xvi) GBFC Development, LLC; (xvii) GBFC Development, Ltd.; (xviii) GBFC Marina, Ltd.; (xix) Gulf Bay Hospitality Company, LLC; (xx) Gulf Bay Hospitality Company, Ltd.; (xxi) Gulf Bay Hotel Company, LLC; (xxii) Gulf Bay Hotel Company, Ltd.; (xxiii) DY Land Holdings II, LLC; (xxiv) FC Commercial, LLC; (xxv) FC Parcel 73, LLC; (xxvi) GB Peninsula, Ltd., (xxvii) GBP Development, Ltd. and (xxviii) GBP Development, LLC. The Court previously granted the Debtors' request for joint administration into the lead case In re Fiddler's Creek, LLC, Case No. 10-bk-03846-ALP.

[2]     Capitalized terms used in this Seventh Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Motion to the extent defined therein.

[3]     All of the Debtors, except for Fiddler's Creek LLC and GB Peninsula, Ltd, are Guarantors of the DIP Loan.

(ii)     borrow, pursuant to the DIP Loan Documents, one or more interim initial advances in an aggregate amount not to exceed the amounts set forth in the four (4) week period from June 1, 2011 through June 30, 2011 (the "Seventh Interim Period") contained in the budget admitted into evidence at the Seventh Interim Hearing and attached hereto as Exhibit A (the "Seventh Interim Budget") for a maximum borrowing of $5,330,899.00 when combined with the borrowings authorized by the Court pursuant to that certain Interim Order, dated March 10, 2010 (C.P. #73) (the "First Interim Order"), that certain Second Interim Order, dated April 30, 2010 (C.P.# 184) (the "Second Interim Order"), that certain Third Interim Order, dated July 26, 2010 (C.P.# 310)(the "Third Interim Order"), that certain Fourth Interim Order, dated October 7, 2010 (C.P.# 416)(the "Fourth Interim Order") that certain Fifth Interim Order, dated December 28, 2010 (C.P.# 576) (the "Fifth Interim Order"), and that certain Sixth Interim Order, dated April 1, 2011 (C.P. #788)(the "Sixth Interim Order") which maximum borrowing is after application of the repayments thereof authorized by separate orders of the Court (collectively, the "_Advance"),[4] provided however, that the Advance approved pursuant to this Seventh Interim Order shall be in addition to the borrowings authorized by the Court by separate orders in connection with the Textron DIP Loan;

(iii)     except as specifically and expressly set forth herein, grant to the DIP Lender, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code and the terms of the DIP Loan Documents, but subject in all events to the Carve Out (set forth below), perfected and

---

[4]     In the DIP Motion, the Debtors request the authority to borrow up to $25,000,000 (the "DIP Loan") upon entry of a final order on the DIP Motion. At the Seventh Interim Hearing, the Court only considered the Debtors' request to borrow up to approximately $5,330,899.00 million in accordance with the Seventh Interim Budget when combined with the amounts actually borrowed under the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and Sixth Interim Order after application of previous repayments. The Court will consider the further relief requested by the Debtors in the DIP Motion at the Further Hearing, as defined below.

enforceable liens comprised of (a) a first priority lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on all tangible and intangible assets and property of the Debtors that are unencumbered by liens (other than any liens for special assessments in favor of the CDDs), (b) a first priority lien and security interest, pursuant to section 364(c)(3) of the Bankruptcy Code, on all tangible and intangible assets and property of the Debtors that are not encumbered by liens in favor of the Prepetition Secured Lenders (as defined below), which liens and security interests granted to the DIP Lender would, however, be junior only to Permitted Liens (for avoidance of doubt and for all purposes under the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order, the definition of Permitted Liens shall not include the DIP Liens granted hereunder or under the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and the Sixth Interim Order), and (c) a super-priority priming first lien, pursuant to section 364(d) of the Bankruptcy Code (the "Priming Lien"), in all other tangible and intangible assets, personal and real property of the Debtors, whether now owned or hereafter acquired, subject only to Permitted Liens, and senior to the liens held by the Prepetition Secured Lenders, provided however, that the DIP Lender has agreed that (i) the Priming Lien granted to it pursuant to the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order (and any future interim or final order) shall be subordinated to, and shall not prime or be equal or senior to, the pre-petition liens and security interests granted by one or more of the Debtors to Iberia Bank, N.A., as successor to Orion Bank, N.A. in respect of the Tarpon Club Loan and the Orion Collateral (each as defined in the DIP Motion)(hereinafter, the "Iberia Collateral"), which agreement to subordinate the Priming Lien in respect of Iberia Bank is based on the agreement by Iberia Bank to

consent to the entry of the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order and any future interim or final orders in respect of the DIP Loan, (ii) with respect to the Tomen 2 Note and the Tomen 2 Collateral (each as defined in the DIP Motion) held by Fiddler's Land Investor, LLC., ("Fiddler's Land Investor") as successor to Colonnade Naples Land, LLC ("Colonnade"), as assignee of Tomen America, Inc., the DIP Lender shall not have any lien, including the Priming Lien, on or encumbering the Tomen 2 Collateral and the DIP Lender consents to the payment of contract, non-default interest to Fiddler's Land Investor in respect of the Tomen 1 Note from and after the entry of a Final Order on the DIP Motion, provided that the DIP Lender's agreements hereunder are based on the agreement by Fiddler's Land Investor to consent to the entry of the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order and any future interim or final orders in respect of the DIP Loan, which orders include a Priming Lien in favor of the DIP Lender in respect of the Tomen 1 Loan and the Tomen 1 Collateral (each as defined in the DIP Motion), and provided further that the "Waterfall" provisions set forth in the DIP Motion, the Commitment Letter and the DIP Loan Documents shall be and hereby are modified to reflect the existence of a junior and subordinated lien on the Iberia Collateral and the agreement of the DIP Lender not to assert a lien on the Tomen 2 Collateral, (iii) the Priming Lien granted to it pursuant to the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order (and any future interim or final order) shall be subordinated to, and shall not prime or be equal or senior to, the post-petition debtor in possession liens and security interests, as well as the pre-petition liens and security interests, granted by FC Golf, Ltd. to Textron Financial Corporation ("Textron") in respect of the Textron DIP Loan

and the Textron Loan on the Textron Collateral (each as defined in the DIP Motion), which agreement to subordinate the Priming Lien in respect of Textron is based on Textron agreeing to make the Textron DIP Loan and Textron's consent to the entry of the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and Sixth Interim Order and any future interim or final orders in respect of the DIP Loan from the DIP Lender;

(v)     incur the DIP Obligations under the DIP Loan and pay all amounts contemplated to be paid thereunder, including all fees and expenses set forth therein;

(vi)     use the proceeds of the DIP Loan in a manner consistent with the terms and conditions of the DIP Loan Documents, and in accordance with the Seventh Interim Budget, subject to the Permitted Budget Variance (as defined below), solely for the purposes set forth in the Seventh Interim Budget, including for (a) working capital and general corporate purposes, including the payroll and overhead associated with operating Fiddler's Creek, (b) payment to the Fiddler's Creek Community Development Districts 1 and 2 ("CDD 1" and "CDD 2") of the "off roll" operation and maintenance assessments owed to CDD 1 and CDD 2, provided however, that the Seventh Interim Budget (unlike the budgets applicable to the Second Interim Order, the Third Interim Order, the Fourth Interim Order, Fifth Interim Order and Sixth Interim Order) contemplates that CDD1 and CDD2 do not require a non-interest bearing loan/advance[5] towards the payment of "on roll" operation and maintenance assessments, (c) payment of costs of administration of the Chapter 11 Case, to the extent set forth in the Seventh Interim Budget, (d) payment of interest, fees and costs to the DIP Lender under the DIP Loan Documents, (e) payment of the maintenance of, and warranty work associated with, certain of the assets and properties owned by the Debtors, which serve as

---

[5] CDD 1 and CDD 2 have respectively agreed to reimburse the Debtors for the loans/advances made by the Debtors in connection with the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim

collateral to one or more of the Prepetition Secured Lenders, and (f) payment of insurance on the certain of the assets and properties owned by the Debtors, which serve as collateral to one or more of the Prepetition Secured Lenders;

(vii)     grant to the DIP Lender, pursuant to section 364(c)(1) of the Bankruptcy Code, a super-priority administrative expense claim in respect of all DIP Obligations with priority over all administrative expenses, subject to the Carve-Out (as defined below), the Textron DIP Loan in respect of FC Golf, Ltd. and the other terms and conditions contained herein;

(viii)    authorizing the Debtors to use the Cash Collateral (as defined below) of certain of the Prepetition Secured Lenders and grant adequate protection in connection therewith as more fully set forth below;

(xix)     vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Seventh Interim Order;  and

(x)       schedule a final or further interim hearing (the "Further Hearing") to consider entry of a final or further interim order (the "Final Order") granting the relief requested in the DIP Motion (as modified by the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order) on a final basis or on a further interim basis and approve the form of notice with respect to the Further Hearing.

The Court having considered the DIP Motion, the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and the Sixth

Order and Sixth Interim Order at such time as the "on roll" assessments are paid to the respective CDD in connection with the payment of the tax bill to the Collier County Tax Collector for tax year 2009.

Interim Order, the record of the hearing related to the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and the Sixth Interim Order, the testimony of Anthony DiNardo at the Seventh Interim Hearing through the proffer of such testimony, the Exhibits introduced into evidence at the Seventh Interim Hearing, and the other evidence submitted and admitted into evidence at the Seventh Interim Hearing and in respect of the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order and the Sixth Interim Order and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the local rules of the Court; having reviewed the record in these proceedings, due and proper notice of the DIP Motion and the Seventh Interim Hearing having been given; the Seventh Interim Hearing having been held and concluded; and it appearing that approval of the relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Further Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and is essential for the continued operation of the Debtors' business; and those objections to the entry of this Seventh Interim Order filed or asserted at or in connection with the Seventh Interim Hearing being settled, resolved or overruled by the Court, without prejudice and with a reservation of such objections in respect of the entry of a further interim order or a Final Order continued to the Further Hearing, as defined below (for avoidance of doubt, the rights of all parties in interest to rely upon previous objections or file further or additional objections, unless settled herein or by previous agreement, to the entry of any further interim order or a Final Order are preserved); and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE SEVENTH INTERIM HEARING AND IN CONNECTION WITH THIS SEVENTH INTERIM ORDER, THE**

**COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      **Petition Date**.  On February 23, 2010 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.  The Chapter 11 Cases have been ordered jointly administered for all purposes.

B.      **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. §157(b)(2).  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

C.      **Committee Formation**.  On March 9, 2010, the United States Trustee formed an Official Homeowners Committee (C.P.# 72).  Thereafter, on April 12, 2010, the United States Trustee reconstituted the Homeowners Committee and re-designated the Homeowners Committee as an official committee of unsecured creditors in the Chapter 11 Cases (C.P.# 132)(the "Committee").

D.      **Notice**.  The Seventh Interim Hearing was being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule FLMB 2009-1(C)(2).  Notice of the Seventh Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, regular U.S. mail, overnight courier or hand delivery through the entry of the Sixth Interim Order on April 11, 2011 and the filing of the Notice to All Parties in Interest, dated May 19, 2011 (C.P.# 1263), of the Debtors' intention to seek a further interim hearing in connection with the DIP Loan, to certain parties in interest as reflected in the record of these proceedings, including, without limitation:  (i) the Office of the United States Trustee; (ii) counsel to the DIP Lender; (iii)

counsel to the Committee, and (iv) parties known by the Debtors to assert Liens securing debt for Money Borrowed with respect to the Collateral (as defined below). Under the circumstances, such notice of the Seventh Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Court.

E.    **Debtors Acknowledgements and Agreements**. The Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(v) hereof shall be referred to herein as the "Debtors' Stipulations"):

(i)    **Pre-Petition Secured Obligations and Pre-Petition Liens**. As set forth in the DIP Motion and the record in these proceedings, the Debtors have the following eight (8) separate prepetition secured creditors: (i) AmSouth n/k/a Regions Bank (ii) Fifth Third Bank (iii) Textron Financial Corporation; (iv) Iberia Bank, as successor to Orion Bank; (v) Fiddler's Debt Investor, LLC, as assignee of KeyBank National Association; (vi) Mellon United National Bank; (vii) Fiddler's Land Investor, LLC., as successor to Colonnade Naples Land, LLC, as assignee of Tomen America; and (viii) Florida Financial Investments, Inc. (collectively the "Prepetition Secured Lenders"). As set forth in the Motion, each of the Prepetition Secured Lenders asserts a mortgage lien on certain property owned by one or more of the Debtors (the alleged "Pre-Petition Liens") for pre-petition obligations incurred by one or more Debtor to one or more of the Prepetition Secured Lenders (the "Pre-Petition Secured Obligations"). The mortgage liens asserted by the Prepetition Secured Lenders do not overlap, as each such Prepetition Secured Lender financed a separate parcel of land and improvements, if any, thereon contained within the overall Fiddler's Creek development. As

such, no one Prepetition Secured Lender asserts a lien on all of the assets and property comprising Fiddler's Creek.

(ii)  **Validity of Pre-Petition Secured Obligations and Pre-Petition Liens**. Except as set forth in the interim and final order approving the Textron DIP Loan separately entered by the Court, as of the Petition Date and the entry of this Seventh Interim Order, the Debtors retain and reserve all claims, causes of action and challenges in respect of the Prepetition Secured Lenders, including in respect of the amount, validity, priority and enforceability of the Pre-Petition Secured Obligations and the Pre-Petition Liens.

(iii)  **Priming of DIP Loan and Liens**. Except as specifically provided herein and in the interim and final order approving the Textron DIP Loan, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash (or otherwise satisfied according to such terms as may be mutually agreed among the Debtors and the DIP Lender), the Debtors shall not, without the consent of the DIP Lender, in any way prime or seek to prime the security interests and DIP Liens (as defined below) provided to the DIP Lender under this Seventh Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or claim on the Collateral (as defined below) or a claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

(iv)  **The Company and the Guarantors**.  Fiddler's Creek LLC and GB Peninsula, Ltd. (collectively, the "Company") are the Borrowers under the DIP Loan Documents and all of the other Debtors (collectively, the "Guarantors") are the joint and several guarantors of the repayment in full of all DIP Obligations.

(v)  **No Impairment**. Without the prior express written approval of the DIP Lender, the Debtors shall not (i) file with the Bankruptcy Court any pleading or request to

(A) limit, alter, modify, or terminate any provision of the DIP Loan Documents, this Seventh Interim Order, or any protection granted to DIP Lender there under, or (B) extinguish, subordinate or diminish any security interest, lien or claim of the DIP Lender, or (ii) seek, consent to, or join in the approval of any matter or any plan of reorganization which purports to do any of the things described in (i)(A) or (i)(B) of this subsection (v).

(vi) **No Priming of Special Assessments Levied by the Fiddler's Creek Community Development Districts #1 and #2.** Notwithstanding any other provisions of this Seventh Interim Order which may be construed to the contrary, the DIP Liens granted hereunder to the DIP Lender, including the Priming Lien and any DIP Liens granted to Textron by separate order of the Court, shall not be senior to or *pari passu* with, but rather shall be junior and subordinate to, the liens for the payment of special assessments granted to or held by the Fiddler's Creek Community Development Districts under applicable law.

F. **Findings Regarding the Post-Petition Financing**.

(i) **Need for Post-Petition Financing**. The Debtors in these Chapter 11 cases as a group are part of a premier, master planned residential community known as "Fiddler's Creek" in southwestern Florida. There are interlocking assets and interlocking dependencies in Fiddler's Creek, although not legally. There has been no substantive consolidation of these chapter 11 cases. The Debtors' properties are and have been marketed as a large community, and many of the properties owned and operated by the Debtors are contiguous. The debts owed by the Debtors are impacted by each other. The payment of CDD maintenance assessments preserves the community for the developed properties and the yet-to-be developed properties. Liens for CDD assessments on the respective properties are senior to the liens for money borrowed by the Debtors on such properties. The Debtors have

asserted equity cushions in some of the properties encumbered by liens in favor of the Prepetition Secured Lenders. The Debtors have asserted and have offered appraisal evidence that certain properties that are not encumbered by liens in favor of any Prepetition Secured Lender have a gross value of $40 million. Such properties are however encumbered by liens for CDD special assessments. There is de facto interdependence even in the absence of actual legal or equitable substantive consolidation. A continuing need exists for the Debtors as a group to obtain funds from the DIP Loan and to use Cash Collateral (as defined below) in order to continue operations, keep the amenities operating and in place and to administer and preserve the value of their estates and of the Fiddler's Creek community. The ability of the Debtors as a group to finance and maintain their overall integrated operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Loan, the absence of which would immediately and irreparably harm the Debtors, their estates, and creditors and the possibility for a successful reorganization of the Debtors' assets as a going concern.

(ii)     **No Credit Available on More Favorable Terms**. The Debtors as a group have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors as a group have also been unable to obtain secured credit, allowable only under sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Loan Documents, the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order. The Debtors as a group are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

G. **Use of Cash Collateral of Textron and Iberia**. In addition to the proceeds from the DIP Loan proposed to be borrowed hereunder, as more fully described in the DIP Motion, certain of the Debtors also require the use of cash generated from the operation of the Textron Collateral (namely the Creek Course) and the cash generated from the operation of the Iberia Collateral (namely the Tarpon Club and the restaurant facilities at the Marco Beach Ocean Resort). Any cash or cash equivalents, funds or proceeds of or derived from certain of the Textron Collateral and certain of the Iberia Collateral allegedly securing the obligations of the respective Debtors to each of Textron and Iberia, under the Textron Note and the Orion Note (hereinafter, the "Iberia Note"), respectively, may constitute cash collateral within the meaning of Section 363 of the Bankruptcy Code (the "Cash Collateral"). Each of Textron and Iberia, pursuant to Sections 361 and 363 of the Bankruptcy Code, are entitled to adequate protection of, and to the extent of their interests in, the Cash Collateral comprising part of the Textron Collateral and the Iberia Collateral from any diminution resulting from the DIP Loan or the use, sale or lease of the Cash Collateral. The use of Textron's Cash Collateral will be addressed by the Court in connection with the approval on an interim and final basis of the Textron DIP Loan by separate order of the Court.

H. **Use of Proceeds of the DIP Loan**. Proceeds of the DIP Loan shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Documents, and in strict compliance with the Seventh Interim Budget (limited pursuant to this Seventh Interim Order to the Seventh Interim Period), subject to the Permitted Budget Variance, solely for the purposes set forth in the Seventh Interim Budget.

I. **Payment of Post-Petition Interest and Expenses**. The Debtors are authorized to pay, and the DIP Lender is entitled to receive, (i) any and all interest and fees under the DIP Loan, and (ii) the costs and expenses of the DIP Lender in connection with the documentation, monitoring

and enforcement of the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order, the Final Order and the DIP Loan Documents, including without limitation, preparation and attendance at hearings before this Court.

J.  **Extension of Financing**. The DIP Lender has indicated a willingness to provide continued interim financing to the Debtors in accordance with the Commitment Letter and DIP Loan Documents and subject to (i) the entry of this Seventh Interim Order, and (ii) findings by the Court that such financing is essential to the Debtor's estates, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, super priority claims, senior security interests and priming liens and other protections granted pursuant to this Seventh Interim Order and the DIP Loan will not be affected by any subsequent reversal, modification, vacatur or amendment of the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order, the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

K.  **Business Judgment and Good Faith Pursuant to Section 364(e)**. (i) The terms and conditions of the DIP Loan and the DIP Loan Documents, and the fees and costs to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Loan and this Seventh Interim Order were negotiated in good faith and at arms' length between the Debtors and the DIP Lender; and (iii) use of the proceeds to be extended under the DIP Loan will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code.

L.    **Relief Essential; Best Interest**.  The relief requested in the DIP Motion is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' integrated assets and real and personal property.  It is in the best interest of Debtors' estates to be allowed to establish the DIP Loan contemplated by the DIP Loan Documents subject to the terms of this Seventh Interim Order.

M.    **Adequate Protection**.  With respect to the Advance authorized hereunder, the Court finds that the Prepetition Secured Lenders are adequately protected in respect of their respective rights and claims in, to and against the Collateral pursuant to and as required by section 361, 363 and 364 of the Bankruptcy Code, including by virtue of the package of protections afforded such Prepetition Secured Lenders by the Debtors as set forth in the DIP Motion and in accordance with the terms of the DIP Loan and DIP Loan Documents.  Specifically, the Court finds that there is a substantial equity cushion in the collateral securing each of the Pre-Petition Liens of the Prepetition Secured Lenders, in particular because of the existence of the agreement of the DIP Lender to marshal the Collateral securing the DIP Loan in accordance with the "Waterfall" provisions set forth in the DIP Motion, the Commitment Letter and the DIP Loan Documents.  Moreover, the Court finds that the use of the proceeds from the DIP Loan to principally benefit and support the collateral of the Prepetition Secured Lenders constitutes additional adequate protection of their interests.  The Court also finds that maintaining and preserving the overall integrated operations of Fiddler's Creek through the DIP Loan provides additional and substantial adequate protection to the Prepetition Secured Lenders.  Lastly, the Debtors' agreement in the DIP Motion not to seek authority in connection with the DIP Motion or through this Seventh Interim Order for the sale of any property securing the obligations owed to any Prepetition Secured Lender provides adequate

protection to such Prepetition Secured Lenders, which agreement is without prejudice to the Debtors filing a separate motion(s) to approve any such sales.

N.  **Entry of Interim Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Seventh Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors and the DIP Lender to the form and entry of this Seventh Interim Order, and good and sufficient cause appearing, it is:

**ORDERED** that:

1.  **Motion Granted**.  The DIP Motion is granted in accordance with and limited to the terms and conditions set forth in this Seventh Interim Order and the DIP Loan Documents.

2.  **DIP Loan Documents.**

(a)  **Approval of Entry Into DIP Loan Documents.**  Except as specifically modified by the terms of this Seventh Interim Order, the terms and conditions of the DIP Loan Documents are hereby approved and incorporated by reference into this Seventh Interim Order solely to the extent of the Advance approved and provided for in this Seventh Interim Order. The DIP Lender shall receive such protections and be entitled to such rights set forth in the DIP Loan Documents, and such rights and protections are hereby approved and incorporated by reference into this Seventh Interim Order.  The DIP Loan Documents are hereby approved for performance by the Debtors and DIP Lender during the Seventh Interim Period.  The Debtors and all other relevant parties are expressly and immediately authorized, empowered and directed (i) to execute and deliver to DIP Lender the DIP Loan Documents to the extent not already executed and delivered, (ii) to consummate the transactions described therein and incur and perform on an interim basis the DIP Obligations in accordance with, and subject to, the terms of this Seventh Interim Order and the DIP

Loan Documents, and (iii) to execute and deliver all instruments and documents which reasonably may be required or necessary for the performance by the Debtors under the DIP Loan and the creation and perfection of the DIP Liens described in and provided for by this Seventh Interim Order and the DIP Loan Documents. The Debtors are hereby authorized to perform all acts, and subject to the provisions of this Seventh Interim Order, pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due, including, without limitation, collateral administration fees and attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Loan Documents, which amounts shall not otherwise be subject to approval of this Court, provided however, that the payment of professional fees and expenses of the DIP Lender shall be governed by the terms of Section 16(b)(i) of this Seventh Interim Order; provided, further, that unresolved disputes as to the reasonableness of any professional fees and expenses may be determined by the Court, as provided herein. The DIP Loan Documents represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms. Notwithstanding anything else herein, the DIP Loan Documents, including the exhibits thereto, are not determinative as to the specific dollar amounts owed to the CDDs, and the Indenture Trustee and the CDD's rights to object with regard to such amounts are preserved.

(b) **Authorization to Borrow**. In order to enable them to continue to operate their business during the Seventh Interim Period, subject to the terms and conditions of this Seventh Interim Order, the DIP Loan Documents and the Seventh Interim Budget (which Seventh Interim Budget may not be materially amended or modified during the Seventh Interim Period), the Debtors are hereby authorized under the DIP Loan to borrow up to the amount of the Advance during the Seventh Interim Period. Notwithstanding any provision of its certificate or articles of incorporation,

bylaws, operating agreement, partnership agreement, membership agreement, certificate of formation, certificate of limited partnership, regulations, or comparable governing documents to the contrary, each Debtor is authorized to, and each officer, member, manager, partner, or other comparable authorized signatory of each Debtor is hereby authorized to cause such Debtor to, jointly and severally guarantee and pay the DIP Obligations of each other Debtor obligated under the DIP Loan Documents, and pledge, mortgage and grant security interests in its assets to secure such DIP Obligations, and to execute and enter into any and all of the DIP Loan Documents and all other documents and transactions necessary to implement and effectuate the terms of the DIP Loan and the DIP Loan Documents.

(c) **Advances to Designated Accounts.** Unless otherwise agreed by the DIP Lender, any portion of the Advance requested by the Debtors and made by the DIP Lender shall be made to one or more debtor in possession operating accounts designated by the Debtors to the DIP Lender and, at the option of the DIP Lender, subject to a control agreement(s) in favor of the DIP Lender in accordance with the DIP Loan Documents (the "Designated Accounts"). The Designated Accounts, if applicable, shall be maintained at an authorized depository consistent with the United States Trustee guidelines.

(d) **Application of DIP Proceeds**. The proceeds of the DIP Loan (net of any amounts used to pay fees, costs and expenses under the DIP Loan Documents) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Documents, and in accordance with the Seventh Interim Budget limited pursuant to this Seventh Interim Order to the Seventh Interim Period, subject to the Permitted Budget Variance, solely for purposes set forth in the Seventh Interim Budget.

(e)     **Conditions Precedent**. The DIP Lender shall have no obligation during the Seventh Interim Period to make any portion of the Advance under the DIP Loan Documents unless the conditions precedent to make such Advance under the DIP Loan Documents have been satisfied in full or waived by the DIP Lender in its sole discretion.

(f)     **Grant of DIP Liens**. Effective immediately upon the entry of this Seventh Interim Order, the DIP Lender is hereby granted, pursuant to subsections 364(c)(2), (c)(3), and 364(d) of the Bankruptcy Code (i) first priority liens on and first priority senior security interests in favor of DIP Lender in all now owned and hereafter acquired Collateral of each Debtor that are not encumbered by any liens (other than any liens for special assessments in favor of the CDDs); (ii) a first priority lien and security interest, pursuant to section 364(c)(3) of the Bankruptcy Code, on all tangible and intangible assets and property of the Debtors that are not encumbered by Pre-Petition Liens in favor of the Prepetition Secured Lenders, which liens and security interests granted to the DIP Lender would, however, be junior only to Permitted Liens; and (iii) priming first priority liens on and priming first priority security interests pursuant to section 364(d) of the Bankruptcy Code (the "Priming Lien") in favor of DIP Lender in all Collateral of Debtors that are subject to any Pre-Petition Liens in favor of the Prepetition Secured Lenders, subject only to the Permitted Liens, with all such liens and claims to be cross-defaulted and cross-collateralized provided however, that the DIP Lender has agreed that (i) the Priming Lien granted to it pursuant to the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and pursuant to this Seventh Interim Order (and any future interim or final order) shall be subordinated to, and shall not prime or be equal or senior to, the pre-petition liens and security interests granted by one or more of the Debtors to Iberia Bank, N.A. in respect of the Tarpon Club Loan and the Iberia Collateral, which agreement to subordinate the Priming Lien in

respect of Iberia Bank is based on the agreement by Iberia Bank to consent to the entry of this Seventh Interim Order and any future interim or final orders in respect of the DIP Loan, (ii) with respect to the Tomen 2 Note and the Tomen 2 Collateral (each as defined in the DIP Motion) held by Fiddler's Land Investor, as successor to Colonnade Naples Land, LLC, the DIP Lender shall not have any lien, including the Priming Lien, on or encumbering the Tomen 2 Collateral and the DIP Lender consents to the payment of contract, non-default interest to Fiddler's Land Investor in respect of the Tomen 1 Note from and after the entry of a Final Order on the DIP Motion, provided that the DIP Lender's agreements hereunder are based on the agreement by Fiddler's Land Investor to consent to the entry of this Seventh Interim Order and any future interim or final orders in respect of the DIP Loan, which orders include a Priming Lien in favor of the DIP Lender in respect of the Tomen 1 Loan and the Tomen 1 Collateral (each as defined in the DIP Motion), and provided further that the "Waterfall" provisions set forth in the DIP Motion, the Commitment Letter and the DIP Loan Documents shall be and hereby are modified to reflect the existence of a junior and subordinated lien on the Iberia Collateral and the agreement of the DIP Lender not to assert a lien on the Tomen 2 Collateral, and (iii) the Priming Lien granted to it pursuant to the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order (and any future interim or final order) shall be subordinated to, and shall not prime or be equal or senior to, the post-petition debtor in possession liens and security interests, as well as the pre-petition liens and security interests, granted by FC Golf, Ltd. to Textron in respect of the Textron DIP Loan and the Textron Loan on the Textron Collateral (each as defined in the DIP Motion), which agreement to subordinate the Priming Lien in respect of Textron is based on Textron agreeing to make the Textron DIP Loan and Textron's consent to the entry of the Second Interim Order, the Third Interim Order, the Fourth Interim Order,

the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order and any future interim or final orders in respect of the DIP Loan from the DIP Lender. Except as set forth above, the Collateral securing the DIP Loan includes, without limitation, (1) all of the Debtors' real estate and improvements, (2) a first priority valid, perfected and enforceable security interest on the Debtors' Accounts, whether now owned or hereafter arising, (3) if applicable, a first priority valid, perfected and enforceable security interest in the Designated Accounts, and (4) a first priority valid, perfected and enforceable lien on and security interest in all of the following types of property of the Debtors, whether now owned or hereafter acquired:

     (i)     all tangible and intangible assets, proceeds, cash collateral or any other property of the Debtors whatsoever, payment guarantees from each Guarantor; and collateral assignment of all material leases, contracts, licenses and permits;

     (ii)     all other goods and personal property of the Debtors, whether tangible or intangible and wherever located, including money, cash, cash equivalents or other assets of the Debtors that now or hereafter come into the possession, custody, or control of the DIP Lender;

     (iii)     all present and future rights, titles, and interests the Debtors may now have or be or become entitled to under or by virtue of any licenses, consents, permits, franchises, variances, certifications and approvals of governmental agencies and all other similar tangible and intangible property of the Debtors and the proceeds thereof including without limitation, any existing and future rights of the Declarants who are Debtors under or by virtue of the Master Declaration (as defined in the DIP Loan Documents); and

(iv)     the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing;

(collectively, the "Collateral"). DIP Lender's liens and security interests in the Collateral are collectively referred to as the "DIP Liens" and all of the DIP Liens shall be cross-collateralized and cross-defaulted as to all of the Collateral. Notwithstanding anything herein to the contrary, the DIP Liens shall at all times be subject to the Carve Out. For avoidance of doubt, the Collateral securing the DIP Loan shall exclude (i) any and all causes of action arising under sections 544, 546, 547, 548 and 550 of the Bankruptcy Code (the "Avoidance Actions"), (ii) any rights of the Debtors to any initiation deposits or escrow deposits by members of the Golf Club at Fiddler's Creek or members of the Tarpon Club, and (iii) any and all Common Areas (as defined in the Declaration) which have been completed as of the Petition Date, utilities systems, any and all real property and improvements thereon, owned by or leased to the Fiddler's Creek Foundation (excepting the DIP Lien's mortgage against the leasehold interests of FC Golf, Ltd. for the cart barn and golf pro shop locations at the Club & Spa pursuant to those certain memorandums of leases recorded in OR Book 3174, Pages 668 through 675 and OR Book 3174, Pages 698 through 704, Public Records of Collier County, Florida), and any and all real property and improvements thereon for the common use, enjoyment, or benefit of the unit owners, homeowners, members within Fiddler's Creek, including but not limited to, as set forth in the Master Declaration (as defined in the DIP Loan Documents).

(g)     Resolution of Fifth Third Objection. Notwithstanding anything herein or in the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order or the Sixth Interim Order to the contrary, the Priming Lien granted to the DIP Lender under the First Interim Order, the Second Interim Order, the Third Interim Order, the

Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and this Seventh Interim Order shall not apply to or constitute a Lien on the Fifth Third Collateral (as defined in the DIP Motion). In addition, the Debtors have agreed to, and hereby, waive any and all rights under section 506(c) of the Bankruptcy Code to assert a surcharge against Fifth Third for any amounts expended by the Debtors from and after the Petition Date

(h)     Resolution of Regions Objection. The Debtors and Regions have agreed to extend through the date of the Further Hearing (as defined below) the agreement between the Debtors and Regions contained in section 3 of that certain *Order Authorizing Disbursement of Net Proceeds From the Sales of Real Property Securing Loan to Regions Bank, N.A.*, dated October 14, 2010 (C.P.# 428) (the "Disbursement Order") as it relates to the sale of the Regions Collateral by the Debtors in exchange for the Sale Fee in accordance with the Disbursement Order.

(i)     In addition in connection herewith, the Debtors and the DIP Lender have agreed that the Regions Collateral shall not be subject to the Priming Lien granted to the DIP Lender under this Seventh Interim Order, provided however, that the Priming Lien granted to the DIP Lender in respect of the Regions Collateral under the First Interim Order, the Second Interim Order, the Third Interim Order and the Fourth Interim Order shall be unaffected by this Seventh Interim Order and shall remain in place as provided therein.

(j)     The Debtors, the DIP Lender and Regions acknowledge that the Seventh Interim Budget does not include any provision for payment of any direct expenses related to the Regions Collateral in the categories indentified in Exhibit C attached to the Fifth Interim Order (the "Regions Parcel Expenses")(the amounts set forth in such Exhibit C for the Regions Parcel Expenses are estimates by the Debtors and do not constitute limitations or caps on such obligations). Regions has agreed to pay, and shall pay, the Regions Parcel Expenses incurred during the Seventh Interim

Period, provided that (i) with respect to utility bills for the Regions Collateral, the payments shall be made against bills received by the Debtors during the Seventh Interim Period as opposed to amounts incurred during the Seventh Interim Period, and (ii) Regions shall put into place and pay for property damage insurance on the Regions Collateral from and after January 1, 2011 through the Seventh Interim Period. The payment of the Regions Parcel Expenses shall be through protective advances made by Regions under its pre-petition loan documents and shall be non-recourse to the Debtors. The agreements between Regions, the Debtors and the DIP Lender provided for herein shall expire as of the Further Hearing, with each party reserving and preserving any and all of their rights in connection with any further request for debtor-in-possession financing after the Further Hearing. In that regard, Regions retains the right to challenge and rebut the evidence relied upon by the Debtors and the DIP Lender in connection with the entry of this Order, and reserves the right to seek relief from the automatic stay, and the Debtors reserve the right to object to such relief. In addition, subject to the terms of this Seventh Interim Order, the Debtors have agreed to, and hereby, waive any and all rights under section 506(c) of the Bankruptcy Code to assert a surcharge against Regions for amounts expended by the Debtors during the Seventh Interim Period, provided however, that such waiver shall not apply if and only to the extent Regions fails to pay the Regions Parcel Expenses as defined below.

(k)     **DIP Lien Priority**.  Except as set forth in this Seventh Interim Order and except for the Permitted Liens, the DIP Liens granted pursuant to the DIP Loan Documents and this Seventh Interim Order shall be priming and senior in priority and shall not be made subject to, or pari passu with any Pre-Petition Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee or examiner appointed in the Chapter 11 Cases, upon the conversion of the Chapter 11 Cases to cases under

Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Cases"), and/or upon the dismissal of the Chapter 11 Cases, provided however, that this provision shall not apply to any bankruptcy case filed by one or more of the Debtors in the future after the closing of these Chapter 11 Cases or any related Chapter 7 case. The DIP Liens shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code. Notwithstanding anything herein which may be construed to the contrary, the DIP Liens granted hereunder to the DIP Lender and the DIP Liens granted to Textron by separate order of the Court shall not be senior to or *pari passu* with, but rather shall be junior and subordinate to, the liens for the payment of special assessments granted to or held by the Fiddler's Creek Community Development Districts under applicable law.

(l) **Enforceable Obligations**. The DIP Loan Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms.

(m) **Protection of DIP Lender and Other Rights**. From and after June 1, 2011, the Debtors shall use the proceeds of the extensions of credit under the DIP Loan only for the purposes specifically set forth in the DIP Loan Documents and this Seventh Interim Order and in strict compliance with the Seventh Interim Budget, subject to the Permitted Budget Variance, as limited pursuant to the terms hereof.

(n) **Super priority Administrative Claim Status**. Except with respect to the Carve-Out during the Seventh Interim Period pending the entry of a Final Order, all DIP Obligations shall be an allowed super priority administrative expense claim (the "DIP Super priority Claim" and, together with the DIP Liens, the "DIP Protections") with priority in the Chapter 11 Cases under

sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code. No costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

3.     **Authorization to Use Proceeds of DIP Loan Documents**. Pursuant to the terms and conditions of this Seventh Interim Order, the DIP Loan and the DIP Loan Documents, and in accordance with the Seventh Interim Budget, as limited by this Seventh Interim Order, the Debtors are authorized to use the Advances under the DIP Loan Documents during the period commencing June 1, 2011 and terminating upon the earlier of (i) an Event of a Default under this Seventh Interim Order or the DIP Loan Documents for which applicable notice has been given under this Seventh Interim Order or the DIP Loan Documents, as applicable, and the expiration of any applicable cure period without cure thereof, or (ii) the date of the Further Hearing (as defined below). Without further order of the Court, the Debtors are not authorized to make or incur any expenditures except in accordance with the Seventh Interim Budget and this Seventh Interim Order, provided that, for any period commencing on February 23, 2010, and ending on the last day of each month thereafter (such period being the "Monthly Period"), actual cumulative expenditures during such Monthly Period do not exceed the cumulative permitted amount of such expenditures for such Monthly

Period set forth in the Budget by more than 10%, (the "Permitted Budget Variance"). Nothing in this Seventh Interim Order shall authorize the disposition of any Collateral outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Loan Documents and in accordance with the Seventh Interim Budget, subject to further order of the Court.

4. **The Carve Out.**

Notwithstanding DIP Liens and the DIP Superpriority Claim granted to the DIP Lender hereunder, the DIP Liens and the DIP Surperpriority Claim shall at all times be junior and subject to (i) payment or reserve from the DIP Loan or the Collateral as applicable those professional fees and disbursements of professionals retained pursuant to sections 327 or 1103(a) of the Bankruptcy Code by the Debtors or the Committee (the "Professionals") incurred and accrued by such Professionals from the Petition Date through the date immediately prior to the date of the occurrence of a Default or an Event of Default in the amounts set forth in the Seventh Interim Budget (the "Pre-Default Carve Out"), provided however, that in accordance with this Court's order in respect of interim compensation, such professional fees and expenses shall be paid monthly from the DIP Loan on the basis of 80% of such fees and 100% of such expenses subject to compliance with such order, with any unpaid professional fees and expenses, including holdbacks, incurred or accrued through the date of a Default or Event of Default being paid from the DIP Loan pursuant to such interim compensation order or, as applicable, upon allowance by order of the Court after the filing of applications by such professionals, notwithstanding the occurrence of an Event of Default under the DIP Loan or the DIP Loan Documents or any exercise of remedies by the DIP Lender, and (ii) fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under Section 1930(a), Title 28, United States Code.

5.    **Maturity Date**. All DIP Obligations of the Debtors to the DIP Lender shall be immediately due and payable, and authority to use the proceeds of the DIP Loan Documents shall cease on the date that is the earliest to occur of (i) any of the following events, or (ii) the date of the Further Hearing (as defined below) (such earliest date being the "Maturity Date"):

(a)    Eighteen (18) months from the date of entry of the Final Order of the Bankruptcy Court approving the DIP Loan, provided that, upon satisfaction of the Extension Conditions and payment of an Extension Fee, each as provided for in the DIP Loan Documents, such period may be extended for up to two additional six (6)-month periods;

(b)    The entry of an order confirming a plan of reorganization for any Debtor (unless otherwise agreed to by the DIP Lender);

(c)    The entry of any order converting any Debtor's case to a case under Chapter 7 or to a Successor Case under section 1112 of the Bankruptcy Code (unless otherwise agreed to by the DIP Lender);

(d)    The entry of any order approving the 363 sale of all or substantially all of any Debtor's assets (unless otherwise agreed to by the DIP Lender);

(e)    The entry of an order appointing a trustee in any Debtor's case under section 1104 of the Bankruptcy Code;

(f)    The entry in any Debtor's case of an order appointing a responsible officer or any examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under sections 105 or 1104 of the Bankruptcy Code;

(g)    The entry of any order dismissing any Debtor's case under section 1112 of the Bankruptcy Code (unless otherwise agreed to by the DIP Lender); or

(h)     The occurrence of an Event of Default for which applicable notice has been given under this Seventh Interim Order, the Final Order, or the DIP Loan Documents, as applicable, and the expiration of any applicable cure period without cure thereof and the acceleration of all Obligations due under the DIP Loan Documents.

6.     **Post-Petition Lien Perfection**. This Seventh Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the Debtors and the DIP Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge or dispute or subordination, at the time and on the date of entry of this Seventh Interim Order. Upon the request of the DIP Lender, without any further consent of any party, each Debtor is authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the DIP Liens and claims. The Debtors

shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens and claims. All such documents will be deemed to have been recorded and filed as of the Petition Date. A certified copy of this Seventh Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Seventh Interim Order for filing and recording. The DIP Lender, in its discretion, may also file a photocopy of this Seventh Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the subject filing or recording officer shall be authorized and is directed to file or record such copy of this Seventh Interim Order.

7. **Payment of Compensation**. Nothing herein shall be construed as consent to the allowance of, or obligate the DIP Lender to pay, any professional fees or expenses of the Debtors, any Committee or of any person or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Seventh Interim Budget. The DIP Lender reserves the right to object to any request or application for the payment of professional fees that may be submitted or filed in the Chapter 11 Cases.

8. **Section 506(c) Claims**. No costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Lender, provided however, that this provision shall not apply to a Chapter 7 trustee in respect solely of the

Collateral pursuant to and in accordance with section 105 or 506(c) of the Bankruptcy Code. Nothing contained in this Seventh Interim Order shall be deemed a consent by the DIP Lender to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the DIP Lender reserves all rights in connection therewith.

9. **Collateral Rights**. Except as specifically provided herein, unless the DIP Lender has provided its prior, written consent or all the DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving the indebtedness described in subparagraph (a) below), there shall not be entered in these proceedings, or in any Successor Case, any order that authorizes any of the following:

(a) Except as permitted in the DIP Loan Documents, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral which is equal or senior to those granted to the DIP Lender and which is granted administrative status equal or pari passu to the DIP Super priority Claim;

(b) Relief from stay by any person other than the DIP Lender with respect to the foreclosure on all or any portion of the Collateral unless the DIP Lender also is given relief from the stay, provided however that this provision shall not prohibit any party in interest from seeking stay relief or impair the ability of any party in interest to obtain stay relief; or

(c) The Debtor's abandonment of Collateral, except as permitted in the DIP Loan Documents.

10. **Application of Proceeds.**

(a) **Sale or Disposition/ Pre-Event of Default**. As set forth in the DIP Loan Documents and subject to further order of this Court, all net proceeds of the sale or other

disposition of any Collateral (after satisfaction of Permitted Liens thereon), prior to the occurrence of an Event of Default, shall be paid to the DIP Lender pending the application thereof to the DIP Obligations according to the provisions of the DIP Loan Documents and this Seventh Interim Order.

(b) **Post-Event of Default/Exercise of Remedies**. After the commencement of an Enforcement Action (as defined herein) by the DIP Lender following occurrence of an Event of Default under any of the DIP Loan Documents or this Seventh Interim Order, any and all proceeds of Collateral (after satisfaction of applicable Permitted Liens thereon) shall be applied in the following order: (i) first, to pay fees, costs and expenses (including attorneys' and paralegals' fees) incurred by the DIP Lender in enforcing the DIP Loan Documents until paid in full; (ii) second, to pay any Protective Advances (as defined below) until paid in full; and (iii) third, to pay the remaining DIP Obligations due and payable to the DIP Lender under the DIP Loan Documents until paid in full.

(c) **Enforcement Action**. As used in this Seventh Interim Order and subject to the terms and provisions of the DIP Loan Documents, the term "Enforcement Action" shall mean (i) any action to foreclose a lien as to any Collateral, (ii) any action to take possession of, or sell, or otherwise realize upon, or to exercise any other secured creditor rights or remedies with respect to, any Collateral, including a sale or other disposition after the occurrence and during the occurrence of an Event of Default under the DIP Loan Documents or this Seventh Interim Order, (iii) taking of any other actions against any Collateral, including the taking of control or possession of, or the exercise of any right of setoff with respect to, any Collateral, (iv) the filing of a lawsuit to collect or to require performance owed by the Debtors, (v) the commencement of any legal proceedings or actions against or

with respect to the Debtors or any of their property or assets or any Collateral after the commencement of the Chapter 11 Cases, including the seeking of relief from the automatic stay or from any other stay in the Chapter 11 Cases, the conversion of the Chapter 11 Cases to a case or cases under Chapter 7 of the Bankruptcy Code, the dismissal of the Chapter 11 Cases under section 1112 of the Bankruptcy Code, the appointment of a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code or of a responsible officer or any examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(d) of the Bankruptcy Code, or (vi) the termination of any obligation to lend under the DIP Loan Documents as a result of the occurrence of an Event of Default thereunder.

11. **Payment of Post-Petition Interest and Expenses**. The Debtors are authorized to pay, and the DIP Lender is entitled to receive, (a) any and all interest and fees under the DIP Loan, and (b) the costs and expenses of the DIP Lender in connection with the Chapter 11 Cases.

12. **Disposition of Collateral**. Except as set forth below or provided in a further order of the Court, entered after notice to the DIP Lender and a hearing, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior, written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender or an order of this Court). Notwithstanding the foregoing, in any sale of the Collateral under section 363(f) of the Bankruptcy Code or under the terms of any plan of reorganization, the DIP Lender shall be entitled to credit bid all or a part of the DIP Obligations.

13. **Events of Default**.

(a)    The occurrence of any of the following events shall constitute an "Event of Default" under this Seventh Interim Order:

(i)     the granting of relief from the automatic stay to foreclose a lien or the taking of control or possession of, or the exercise of any right of setoff with respect to, any Collateral;

(ii)    the failure to obtain the entry of the Final Order with terms satisfactory to the DIP Lender on or before July 15, 2011 unless agreed to otherwise in writing by the DIP Lender in its sole discretion;

(iii)   the entry by the Bankruptcy Court or another court of competent jurisdiction of an order disallowing any of the DIP Obligations or determining that any provision of the DIP Loan Documents is not enforceable according to its terms;

(iv)    the entry by the Bankruptcy Court of an order determining that the DIP Liens are invalid or do not have the priority and extent provided in the DIP Loan Documents, this Seventh Interim Order or the Final Order;

(v)     the expiration or termination of the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization under section 1121 of the Bankruptcy Code without the solicitation and filing of acceptances thereof; and

(vi)    the occurrence of an Event of Default under the DIP Loan Documents (and the expiration of any period of cure, grace or notice, if any, set forth in such agreement relating to such default).

(b)     Unless and until the DIP Obligations are irrevocably repaid in full, and all DIP Obligations that survive termination obligations have been cash collateralized to the reasonable satisfaction of the DIP Lender, the protections afforded to the DIP Lender pursuant to this Seventh Interim Order and under the DIP Loan Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting any of the Chapter 11 Cases into a Successor Case, or dismissing any of the Chapter 11 Cases, and the DIP Liens and DIP Super-priority Claim shall continue in these proceedings and in any Successor Case, and such Liens and DIP Super-priority Claim shall maintain their priority as provided by this Seventh Interim Order.

14.     **Rights and Remedies Upon Event of Default**.

(a)     The DIP Lender shall not have any obligation to make any further loans or advances to the Debtors under the DIP Loan Documents following the occurrence of an Event of Default.

(b)     Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that the DIP Lender shall be entitled to commence an Enforcement Action and otherwise exercise its rights and remedies in accordance with this Seventh Interim Order and the DIP Loan Documents, provided however, that before pursuing any Enforcement Action, the DIP Lender shall first file a motion for relief from stay and obtain the entry of an order of the Court in connection therewith.

(c)     Immediately following the occurrence of an Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of Collateral as provided in this Seventh Interim Order; (ii) such proceeds shall continue to be applied in accordance with the provisions of this Seventh Interim Order; and (iii) the Debtors shall have no right to

use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the DIP Obligations in accordance with the terms of this Seventh Interim Order.

(d)     Notwithstanding anything to the contrary contained in this Seventh Interim Order or in the DIP Loan Documents, (i) in connection with its exercise of remedies, the DIP Lender shall have the right to make such protective and other advances as it deems necessary or appropriate in order to protect or liquidate the Collateral or to otherwise enhance the recovery from the Collateral (the "Protective Advances"), the repayment of which Protective Advances shall become part of the DIP Obligations under the DIP Loan Documents.

(e)     If the DIP Lender exercises any of its rights and remedies upon the occurrence of an Event of Default and entry of an order of the Court in respect of and granting the DIP Lender relief from stay, then the DIP Lender may retain one or more agents to sell, lease, or otherwise dispose of the Collateral. In any exercise of its rights and remedies upon an Event of Default, the DIP Lender is authorized to proceed under and subject to the DIP Loan Documents. Without limiting the foregoing, subject to the terms of the DIP Loan Documents, in the exercise of the DIP Lender's rights and remedies upon an Event of Default, the DIP Lender, may, by written notice to the Debtors, or the Committee, require the Debtors to file a motion seeking to retain one or more agents to sell, lease, or otherwise dispose of the Collateral on terms acceptable to the DIP Lender; provided, that the DIP Lender shall pay any and all reasonable fees and expenses incurred by counsel for the Debtors after an Event of Default in connection with a request made by the DIP Lender pursuant to this subparagraph and subject to the Carve-Out. The Debtors shall file such motion within ten (10) days of the DIP Lender's request and shall diligently prosecute such motion. If the Debtors fail to so file the motion within such time period, the DIP Lender may

file and prosecute such a motion in the name of the Debtors. All proceeds realized from any of the foregoing shall be turned over to the DIP Lender for application to the DIP Obligations in accordance with the provisions of this Seventh Interim Order.

(f)     Nothing included herein shall prejudice, impair, or otherwise affect the rights of the DIP Lender during an Enforcement Action to seek any other or supplemental relief in respect of the Debtors nor the DIP Lender's rights, as provided in the DIP Loan Documents, or to suspend or terminate the making of loans or advances under the DIP Loan Documents following the occurrence of an Event of Default.

15.     **Cash Collateral.** In connection with the proposed use of Cash Collateral hereunder and in order to provide Iberia with adequate protection for the aggregate diminution of the Cash Collateral resulting from the respective Debtors' use thereof, the Orion Borrowers (the Orion Borrowers are hereinafter referred to as the "Iberia Borrowers") have agreed, subject to approval of this Court, that (i) the Cash Collateral generated from the operations of the Iberia Collateral shall be segregated from both the proceeds of the DIP Loan (unless proceeds from the DIP Loan are required to fund such operations) and the cash generated by any other aspects of the Debtors' operations, and used solely to fund the operating expenses, in accordance with the Seventh Interim Budget, related to the Iberia Collateral, and (ii) Iberia shall have, *nunc pro tunc* as of the commencement of these Chapter 11 cases, a replacement lien pursuant to 11 U.S.C. §361(2) on and in all property of the Iberia Borrowers acquired or generated after the Petition Date, but solely to the same extent and priority, and of the same kind and nature, as the property of the Iberia Borrowers securing the prepetition obligations owed to Iberia (the "Cash Collateral Replacement Liens"), provided however, that in all events, such Cash Collateral Replacement Liens shall be junior and subordinate to the DIP Liens granted to the DIP Lender hereunder, in the DIP Loan

Documents and in this Seventh Interim Order in respect of the DIP Loan. For avoidance of doubt, Iberia shall not have or be granted a Cash Collateral Replacement Lien on or against any Avoidance Actions or on or against the proceeds of the Avoidance Actions. In the event that diminution occurs in the value of Cash Collateral of Iberia from and after the Petition Date as a result of the use thereof by the Iberia Borrowers in an amount in excess of the value of the Cash Collateral Replacement Liens granted herein, then Iberia shall have the right to assert an administrative expense claim under section 507(b) of the Bankruptcy Code with priority over all other administrative expense claims, subject in all events to the Carve Out and the DIP Super-priority Claim .

16. **Other Rights and Obligations**.

(a) **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order**. The DIP Lender has acted in good faith in connection with this Seventh Interim Order and its reliance on this Seventh Interim Order is in good faith. Based on the findings set forth in this Seventh Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Loan contemplated by this Seventh Interim Order, in the event any or all of the provisions of this Seventh Interim Order are hereafter modified, stayed, amended or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, stay, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim or lien granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Seventh Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies,

privileges and benefits, including the DIP Protections granted herein, with respect to any such claim or lien. Since the loans made pursuant to the DIP Loan Documents are made in reliance on this Seventh Interim Order, the obligations owed to the DIP Lender prior to the effective date of any stay, modification or vacation of this Seventh Interim Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated, lose their lien priority or super priority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Seventh Interim Order and/or the DIP Loan Documents.

(b)     **Expenses**.

(i)     As provided in the DIP Loan Documents, but subject to the provisions of this Seventh Interim Order, all costs and expenses of the DIP Lender in connection with the DIP Loan Documents, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, title insurance premiums, recordation fees, stamp taxes, intangibles taxes, indemnification and reimbursement of fees and expenses, and other out-of-pocket expenses will be paid by the Debtors. The DIP Lender shall provide to the U.S. Trustee, counsel to the Debtors, counsel to the Committee, counsel to each of the Prepetition Secured Lenders, counsel to the Fiddler's Creek Community Development Districts and counsel to U.S. Bank National Association as Indenture Trustee[6] with regard to the bonds issued by the Fiddler's Creek Community Development Districts (the "Fee Notice Parties"), on a monthly basis, the total amount of professional fees and expenses described in this subsection that are incurred

---

[6] Notwithstanding this provision, the Debtors and the DIP Lender reserve their rights to contest the standing of the bondholders or the U.S. Bank as Indenture Trustee in these Chapter 11 cases.

per calendar month in the Chapter 11 Cases, upon request, along with summary invoices relating to such fees and expenses. Under no circumstances shall professionals for the DIP Lender be required to comply with the U.S. Trustee fee guidelines. In the event any of the Fee Notice Parties object to the DIP Lender's fees or expenses, or any portion thereof, such objecting Fee Notice Party shall send written notice of such objection to the DIP Lender and counsel to the DIP Lender within five (5) days of receipt of the invoice. Any unresolved objection shall be resolved by the Court after notice and hearing. Absent any objections, the Debtors shall pay the DIP Lender's requested fees and expenses, or the portion of such fees and expenses not subject to objection, within five (5) days of receipt of the invoices.

(c)     **Modification of Stay**. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the extent necessary to implement the DIP Loan Documents and this Seventh Interim Order, including, without limitation to (1) permit the Debtors to grant the DIP Liens and to incur all liabilities and obligations to the DIP Lender under the DIP Loan Documents, the DIP Loan and this Seventh Interim Order, and (2) authorize the DIP Lender to retain and apply payments hereunder in accordance with the provisions of this Seventh Interim Order.

(d)     **Proofs of Claim**. The DIP Lender may, but is not required to file proofs of claim in the Chapter 11 Cases or any Successor Case, provided however, that nothing in this Seventh Interim Order shall is intended to modify or change the requirements under the Bankruptcy Code for the filing of a proof of claim in a chapter 7 bankruptcy proceeding.

(e)     **Binding Effect**. The provisions of this Seventh Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) whether in the

Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 Case.

(f) **No Waiver**. The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under the DIP Loan Documents, the DIP Loan, this Seventh Interim Order or otherwise, as applicable, shall not constitute a waiver of any of the DIP Lender's rights hereunder, there under, or otherwise. Notwithstanding anything herein, the entry of this Seventh Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, (i) the rights of the DIP Lender to (a) request conversion of any of the Chapter 11 Cases to a case under Chapter 7, dismissal of any of the Chapter 11 Cases, or the appointment of a trustee in any of the Chapter 11 Cases, or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (ii) enforce any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender.

(g) **No Third-Party Rights**. Except as explicitly provided for herein, this Seventh Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(h) **No Marshaling**. Other than as provided in the Commitment Letter and the DIP Loan Documents in respect of the "Waterfall," the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral. The entry of this Seventh Interim Order is without prejudice to the rights of the Prepetition Secured Lenders to assert any and all defenses to a foreclosure of the Collateral by the DIP Lender pursuant to this Seventh Interim Order, including to raise defenses related to the value of the Collateral contained in the Waterfall. Specifically, notwithstanding anything herein or in the DIP Loan

Documents that may be to the contrary, in the event the DIP Lender completes a foreclosure of the Collateral securing the DIP Loan in accordance with the "Waterfall," then for each property foreclosed upon by the DIP Lender, the fair market value of said property (as determined by the court with jurisdiction over the foreclosure case at the time of the foreclosure sale in accordance with applicable law) purchased at the foreclosure sale shall be applied to reduce the outstanding balance of the DIP Loan at such time.

(i)     **Section 552(b)**.  The DIP Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

(j)     **Protection of DIP Liens**.  The Debtors shall provide to DIP Lender endorsements of insurance policies insuring all or any part of the Collateral and each insurer shall cooperate to provide to DIP Lender all such endorsements of existing insurance policies providing for DIP Lender to be primary loss payee under any such policies in connection with Collateral that is subject to the Priming Lien.

(k)     **Preservation of DIP Liens**.  Other than Permitted Liens, no claim or lien having a priority superior to or *pari passu* with those granted by this Seventh Interim Order to the DIP Lender shall be granted or allowed while any portion of the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551, or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

(l)     **Amendment**.  The Debtors and the DIP Lender may amend or waive any provision of the DIP Loan Documents, provided that such amendment or waiver, in the judgment of the Debtors and the DIP Lender, is either non-prejudicial to the rights of third parties or is not

material. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf of the Debtors and the DIP Lender (after having obtained the approval of the DIP Lender as provided in the DIP Loan Documents) and approved by the Court.

(m) **Survival of Seventh Interim Order, Expiration of the Seventh Interim Order**. The provisions of this Seventh Interim Order (including without limitation, the DIP Protections and all DIP Liens granted hereunder) and any actions taken pursuant hereto shall be effective on the entry hereof ("Effective Date") and shall survive entry of any order which may be entered (i) confirming any Plan in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. The terms and provisions of this Seventh Interim Order, including the DIP Protections granted pursuant to this Seventh Interim Order, and the DIP Loan Documents, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Seventh Interim Order until all the obligations of the Debtors to the DIP Lender pursuant to the DIP Loan Documents pursuant to this Seventh Interim Order have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Loan or this Seventh Interim Order which survive such discharge by their terms). The DIP Obligations shall not be discharged by the entry of an order confirming any Plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code. The Debtors shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of the DIP Obligations, on or prior to the earlier to occur of (i) the effective date

of any such Plan, and (ii) the Maturity Date. If an order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise is at any time entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the superpriority claims, priming liens, and security interests granted to the DIP Lender pursuant to this Seventh Interim Order and the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Seventh Interim Order and DIP Loan Documents until all DIP Obligations shall have been indefeasibly paid in cash in full (or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the DIP Lender) and that such superpriority claims and priming liens, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above. For avoidance of doubt, this provision shall not apply to any bankruptcy case filed by one or more of the Debtors in the future after the closing of these Chapter 11 Cases or a related Chapter 7 case.

(n) **Inconsistency**. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Seventh Interim Order, the provisions of this Seventh Interim Order shall govern and control.

(o) **Enforceability**. This Seventh Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon execution and entry on the docket hereof.

(p) **Objections Overruled**. All objections to the entry of this Seventh Interim Order, to the extent not settled and withdrawn, are overruled. All objections to the entry of a Final

Order in respect of the DIP Motion to the extent not withdrawn or resolved, are hereby overruled and continued and preserved to the Further Hearing.

        (q)    **No Waivers or Modification of Seventh Interim Order**. The Debtors irrevocably waive any right to seek any modification or extension of this Seventh Interim Order without the prior written consent of the DIP Lender and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

       17.    **Final or Further Interim Hearing**.

A Further Hearing to consider entry of the Final Order and final approval of the DIP Loan or a continued interim order is scheduled before the Honorable Judge K. Rodney May, U.S. Bankruptcy Judge, in Court room 9B, Sam. M. Gibbons, United States Courthouse Federal Building, 801 N. Florida Avenue, Tampa, Florida at **2:30 p.m.** (Eastern Time) on **June 30, 2011.** On or before **5:00 p.m. on June 23, 2011**, the Debtors shall file a notice with the Court notifying the Court and the parties in interest as to whether the Debtors intend to seek a further interim order or a Final Order at such hearing.

Any party in interest objecting to the entry of a proposed Final Order or further Interim Order shall file written objections with the Clerk of the Court no later than **noon on June 27, 2011, ("Objection Deadline")** which objections shall be served so that the same are received on or before the Objection Deadline by: (a) counsel for the Debtors, Paul J. Battista, Esq., Genovese Joblove & Battista, P.A., 100 S.E. Second Street, 44th Floor, Miami, FL 33131, pbattista@gjb-law.com.; (b) counsel for DIP Lender, Stephen R. Leslie, Esq., Stichter Riedel Blain & Prosser, P.A., 110 East Madison Street, Suite 200, Tampa, FL 33602, sleslie@srbp.com; (c) J. Steven Wilkes, Office of the U.S. Trustee, 501 East Polk Street, Tampa, Florida 33602, steven.wilkes@usdoj.gov, and (d) counsel to the Committee, Paul Steven Singerman, Esq. and Jordi Guso, Esq., Berger Singerman,

200 South Biscayne Blvd., Suite 1000, Miami, FL 33131, singerman@bergersingerman.com and jguso@bergersingerman.com. Notwithstanding the terms of this Seventh Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Seventh Interim Order, subject to the protections under section 364(e) of the Bankruptcy Code and the rights of the DIP Lender to terminate the DIP Loan Documents if such Final Order is not acceptable to it. In the event this Court modifies any of the provisions of this Seventh Interim Order or the DIP Loan Documents following such further hearing, such modifications shall not affect the rights and priorities of the DIP Lender pursuant to this Seventh Interim Order with respect to the Collateral, and any portion of the DIP Obligations which arise or is incurred, advanced or paid prior to such modifications (or otherwise arising prior to such modifications), and this Seventh Interim Order shall remain in full force and effect.

18. **Retention of Jurisdiction**. This Court has and will retain jurisdiction to enforce this Seventh Interim Order according to its terms.

19. **No Consolidation.** Nothing in this Seventh Interim Order shall constitute or be deemed to constitute a substantive consolidation of the bankruptcy estates of the Debtors.

20. **Effective on Entry.** This Seventh Interim Order shall be effective immediately upon entry.

DONE AND ORDERED in Chambers at Tampa, Florida, on _6 - 20 - 11_ .


_____
K. RODNEY MAY
UNITED STATES BANKRUPTCY JUDGE